Butler *vs.* Gannon & Duvall.

(Decided 12th March, 1880.) *cause remanded.*

KENNEDY H. BUTLER *vs.* FRANCIS GANNON and E. P. DUVALL trading as GANNON & DUVALL.

*Action of Replevin—Instructions.*

The appellant rented a house wherein was certain machinery, to H. for a term of three years. H. entered into possession in December, 1871. In January, 1872, the appellant made an agreement with H. by which it was arranged that H. should own the machinery, and as consideration, H. paid a certain sum down, and gave his notes for the balance; it was agreed that if the notes were not paid the appellant should own the property. After the sale of the property to him, H. on the 20th August, 1872, mortgaged it to the appellees to secure a debt due them. He absconded about the 1st January, 1873, and on the 6th January, the appellees by virtue of the mortgage took possession of the machinery, of all of which the appellant was made aware. The appellees (to whom the appellant had rented the premises on which was the machinery) were induced by the appellant to leave the property there, under the impression that the appellant would not claim it on his own or on H's account. On the 8th January, the appellant seized the machinery under a distress, and it was sold to him as H's property. In an action of replevin by the appellees against the appellant it was HELD :

That they were entitled to the machinery.

The Court has power at any time during the trial to modify its instructions or to revoke them altogether, if on reflection it is judged necessary.

APPEAL from the Circuit Court for Frederick County, on removal from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial after the exceptions to evidence [all of which are stated in the opinion except the third, in which the defendant proposed to offer in evidence the paper set out in the second bill of exceptions, and in connection therewith certain notes therein provided for, and offered to follow said paper by evidence showing that said notes were not paid at maturity, and have never been paid by W. H. Hinkle, to which proof for the plaintiffs objected,] the plaintiffs offered nine prayers, of which it is necessary to set out only the following ; the substance of the others is stated in the opinion :

1. That if the jury find from the evidence, that the defendant, on or about the 6th of January, 1873, rented or let to the plaintiffs the premises mentioned in the declaration in this cause, and that at the time of said letting, the goods and chattels mentioned in the declaration, were the goods and chattels of the plaintiffs, then the defendant is estopped from distraining on such goods and chattels to satisfy rent due for same premises by any former tenant.

2. That if the jury find from the evidence, that said goods and chattels were, on or about the 6th January, 1873, the property of the plaintiffs ; and if they further find that the defendant, for a money consideration, agreed to allow the said goods and chattels to remain in storage in a room in the defendant's premises, then defendant is estopped from distraining on said goods and chattels for rent, due by any tenant of the room in which the goods were stored.

3. That if the jury find from the evidence, in this cause, that on or about the 6th January, 1873, the goods and chattels aforesaid, were the plaintiffs' property, and that on or about the 6th January, 1873, the plaintiffs were prepared and were about to remove the same from the premises of the defendant ; and if they further find that the defendant induced the plaintiffs to leave said goods and chattels on his premises, and told said plaintiffs that

he had no claim on said goods and chattels for rent, and that all the rent due by William A. Hinkle, his former tenant, was paid or settled; and if the jury further find that the plaintiffs were induced to allow the said goods and chattels to remain on the premises by the representations aforesaid, then and in that case the said Butler is estopped from distraining on said property, to satisfy rent due by William A. Hinkle, prior to the date of said statements and representations, even though the said Butler was mistaken in making said statements.

4. That if the jury shall find from the evidence in the cause, that the defendant sued out or issued a warrant to distrain the goods and chattels of W. A. Hinkle, for rent alleged by the defendant to be due to him by the said Hinkle, and seized thereunder upon the property mentioned in the mortgage offered in evidence in this cause, that then the distress was wrongful, and the avowant, the defendant in this case, cannot justify under it, if the jury find from the evidence that during the continuance of the alleged lease to said .Hinkle, the defendant and plaintiffs agreed that said Hinkle should be discharged from said lease, and the plaintiffs adopted as tenants of the same premises, and that the plaintiffs entered in pursuance of said agreement before the levying of said distress by said defendant.

5. That if the jury shall find from the evidence that the defendant, on or about the 6th of January, 1873, agreed with the plaintiffs, that if William A. Hinkle, did not pay the defendant the rent alleged by the defendant to be due to him by said Hinkle, and that if the plaintiffs would pay for the use of the room where the said goods and chattels were then, that then the defendant would let the said goods and chattels remain in said room on the premises of the defendant, that then the defendant was estopped from distraining said goods and chattels during the period he so agreed to let them remain in said room on said premises.

And the defendant offered six prayers; of which it is necessary to set out only the following:

1. That if the jury find from the evidence in the cause, that the defendant owned the premises and building situated on the corner of Henry street and Rizer alley, in the City of Cumberland, and the machinery mentioned in the declaration in this case, and that said machinery was situated in said building, and that in December, 1871, a certain William A. Hinkle entered into the said premises as tenant of said defendant, and that on the first day of January, 1872, the defendant rented to the said Hinkle the said premises, including the machinery therein contained, together with the power to run the same, connected with his engine situated in the adjoining building, for the term of three years, beginning with the first day of January, 1872, and ending in 1875, and that said Hinkle remained in said premises, as tenant of said defendant, up to and after the date of the execution of the mortgage from Hinkle to Gannon & Duvall, offered in evidence by the plaintiffs in this cause, then that such possession of said machinery did not give the said Hinkle the right to execute the said mortgage, and said mortgage did not convey any title to the machinery therein mentioned, to said Gannon & Duvall.

2. That there is no sufficient evidence in this cause, of title in Hinkle, under whom plaintiffs claim the machinery mentioned in the declaration, and set out in the mortgage offered in evidence in this cause, to enable the plaintiffs to recover in this action.

3. That if the jury believe the facts set out in defendant's first prayer, then that plaintiffs are not entitled to recover in this action, even though they may also find that the defendant, on the 6th day of January, 1873, told the plaintiffs that Hinkle did not owe him any rent, and that in consequence of said statement the plaintiffs allowed the machinery in question to remain upon said premises.

5. That if the jury shall find from the evidence that Will. A. Hinkle executed the mortgage in this case to the plaintiffs, and that the plaintiffs, with their attorney, called upon the defendant on the 6th of January, 1873, for the purpose of taking possession of the machinery mentioned in said mortgage and carrying the same away, and the plaintiffs knew that said Hinkle had run off to avoid his creditors, and they concealed said fact from the defendant, then that the defendant is not estopped from claiming title in himself to said machinery by reason of his purchase at the sale under the distress proceedings; provided they shall find that said proceedings were regular, although they may also believe that an agreement was made between the plaintiffs and defendant for storage of said machinery, and by reason of said agreement, they abandoned their intention of removing the machinery at the time.

The defendant excepted, and the verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*R. T. Semmes,* for the appellant.

*James McSherry* and *John Ritchie,* for the appellees.

IRVING, J., delivered the opinion of the Court.

This is an action of replevin wherein the right to the possession of certain machinery for sawing, mortising and planing is involved.

The appellees replevied the machinery from the appellant. The declaration was in the usual form, and the appellant plead *non cepit,* property in himself, property in another, avowry in distress as landlord of Hinkle, under

whom appellees claim, and former recovery against appellees. Appellees traversed all these pleas in due form, and replied *nul tiel record* to the plea of former recovery. As no question arises on the pleadings, it is unnecessary to be more specific in relation thereto.

The appellant claims the property on two grounds: First, That he never sold the property in controversy to William A. Hinkle, from whom the appellees claim to have acquired title, and, secondly, that if he had sold to Hinkle, he has acquired title by purchase of the property under distress against Hinkle as his landlord. The appellees claim the right of possession by virtue of a mortgage from William A. Hinkle, dated August 20th, 1872, to secure a debt of one thousand dollars, and of the subsequent surrender of the property to them by Hinkle on the 6th of January following, with knowledge on the part of appellant of both the mortgage and the surrender of possession to them, the appellees, without objection or claim of title; and also by virtue of information to them that the appellant had no claim against Hinkle for rent which he would enforce against the property, by reason of which they were induced to forbear removing the property from the house, where it was, and to rent the house for its storage; whereby appellees claim that the appellant is estopped from claiming title or right of possession under either of his claims.

The first bill of exception presents a question of evidence. The appellees, as plaintiffs below, having offered testimony tending to show the possession of Hinkle, on 20th of August, 1872, when he mortgaged the property to them in due form to secure a debt of one thousand dollars, to which was a condition annexed that if the debt was not paid before the 20th day of November, 1872, the mortgagees should be entitled to take possession, and sell on notice, &c., and that on the 6th of January following appellees took possession of the machinery in question,

and that the appellant was notified of such mortgage, and knew of the surrender of possession, and made no claim to the property, either when notified of the mortgage or of the surrender of possession, at which he was present; and that two days thereafter the appellant issued distress against Hinkle, and seized the property, and afterwards sold it as Hinkle's property, rested their case. Whereupon the appellant, to sustain the plea of former recovery (to which appellees had replied *nul tiel record*), offered in evidence the record of a suit in the Circuit Court for Allegany County wherein the appellees had sued the appellant for damages in an action of trespass *quare clausum fregit,* on the trial of which action the appellees had failed in their suit, and the appellant had recovered a judgment against the appellees for his costs. The rejection of that evidence forms the subject of the first exception.

We see no error in the ruling of the Court below on this question. The subject-matter of the two suits is by no means the same. The present suit involves the right to the possession of the property described in the *narr.* The suit of which the record is offered was one in which the appellees claimed damages for the breach of their alleged close, and hindrance in the prosecution of their lawful business. One of the essential conditions of the plea of *res adjudicata* is wanting—the identity of the cause of demand and the thing demanded. *Herman on Estoppel,* 24. The record offered was very clearly not admissible for the purpose offered, because it did not establish that the right to the possession of this property had been therein and thereby passed upon. The defendant then testified that he rented the house where this machinery was, together with the machinery, to William A. Hinkle, for a term of three years, for the sum of $600 for the first fifteen months, $900 for a second year, beginning with April 1st, 1873, $1200 for a third year, and that Hinkle entered into possession in December, 1871, and

that the rental included the building and the machinery both together, with the connecting power in the building occupied by witness himself, and that subsequently, on on 2nd of January, 1872, he entered into an agreement with Hinkle in reference to the machinery, and then offered the original agreement in evidence. The Court rejected the agreement, and that ruling forms the complaint in the second exception. The paper offered in evidence is dated Cumberland, January 2nd, 1872, and begins thus: "Mr. William A. Hinkle, to K. H. Butler, Dr." Then follow the several articles of property, with the price to each affixed, all footing up "$1542.00." then follows this language, "Received of Wm. A. Hinkle six hundred dollars in cash, one note for two hundred and seventy-five dollars, at four months, which I agree to pay the discount on, and renew for another four months; and another note for six hundred and sixty-seven dollars, which I agree to pay the discount on, and renew for another three months, to be in payment of the *above bill*, provided said notes are paid when matured, as per above conditions as to renewals, and if not paid at maturity, then I hold and own the above articles of machinery, unless the said William A. Hinkle makes such arrangements for the payment of said notes as may be fully satisfactory. I, William A. Hinkle, on my part, agree to keep all the above named machinery insured against fire, and to meet the above notes at maturity, payable at the First National Bank, Cumberland, Maryland. I further agree that the said K. H. Butler, shall hold and own all the above machinery, and that I will not remove any part of it from his factory building, until the above agreements are complied with, and that I will be responsible for damages either by fire, use or from any other cause, until said notes are fully satisfied." This paper was signed by "Kennedy H. Butler" and "William A. Hinkle."

Butler *vs.* Gannon & Duvall.

This paper, if offered as an agreement constituting a lien in the nature of a mortgage, to have precedence over the claims of the appellees where mortgage was taken subsequently, was inadmissible because it lacks all the formalities of acknowledgment, affidavit of consideration, and record to give it life as a mortgage, as against the appellees. If it was offered as evidence of a conditional sale, it cannot be so construed and treated. It shows that the purchaser paid a large part of the purchase money in cash, and executed unendorsed notes for the residue; that the purchaser was put in possession, and it was only in the event of non-payment of the notes that vendor was *then* to own the property. The latter part of the agreement provides that Butler "*shall own*" the property; it is in the future tense and must be construed with the first clause, and as meaning an ownership in the event there designated. It provides for the purchaser's keeping the property insured; but does not provide for it being kept insured in the name of the vendor. By a propér construction of the agreement it was an actual sale of the property, with the effort to retain the lien on it without going through the formalities of a mortgage. Whatever it was as between the parties to it, to the public it was a sale of the property. By the arrangement Hinkle was enabled to insure the property in his own name; he was in possession of it; was no longer to pay for its use, as he had been doing; he was enabled to claim it as his, and did by the highest act of claim execute a conveyance of it by way of mortgage, without claim on the part of the appellant, as also appears. Except as between the parties themselves, it is against the policy of the law to recognize such sales as other than absolute sales. Possession having accompanied the purchase by Hinkle, title, by way of mortgage could not be re-acquired except in conformity with section 51, of Article 24 of the Code. There was no error in rejecting the paper as complained of in the second excep-

tion, nor did the proffered proof mentioned in the third exception to accompany it, help it. The ruling in each case was in our opinion right.

The fourth exception complains of the Court's permitting the appellant, when on cross-examination, to be asked "if he had not rented the property on the 6th of January, to the appellees." The question referred to the property in which this machinery was, and from which it was taken by the distress proceedings. He had already testified to having distrained on the 8th of January, on the property in controversy for rent due from Hinkle; he had also admitted in his testimony being present when Mr. Williams, the agent of the appellees, came to take the property away, and that he did not object, nor claim the property. By silence he had admitted Hinkle's right to dispose of the property, and had interposed no objection to its removal, and it was certainly competent for the appellees to shew a contract of renting or any other agreement by which the appellant induced them to let the property stay where it was ; for if by any device of his he prevented them from removing the property until such time as he could get out his distress proceedings without notifying them of such intention to distrain or hold the property, it would have been a fraud on the appellees, which would affect his right to claim by purchase under the distress process and sale. The question was properly admitted. Having been answered, it was then asked that it be ruled out, because of the adjudication already had in the record heretofore declared inadmissible to establish the plea of former recovery, which record was now offered anew with the proffer of parol proof that the question of renting was passed upon in that case. The refusal to strike out the answers forms the ground of the fifth exception. This exception has not been insisted on in argument or in the brief, and we see no ground of complaint. The question whether the appellant did really rent the property mentioned in

the question to the appellees is not directly involved, and is not one of the issues ; and whether what passed between the parties litigant actually amounted to a renting, is wholly immaterial. If the negotiations were such as to induce the appellees to leave the property where it was, as we have already said, under the impression that the appellant did not and could not lay any claim to it on his own account or on account of Hinkle, the evidence of what did transpire between the parties touching the sub-ject-matter is clearly evidence.

The sixth exception embraces the prayers granted and rejected. Here it is necessary to recur to the testi-mony again. In addition to what has already been adverted to, the appellees proved by Williams, their agent, that when he was about removing the machinery from appellant's house, the appellant made no objection, and laid no claim to the property, as before stated, and that looking to the protection of appellees, if the property was left there, he asked the appellant if he would come on the property for Hinkle's rent and he said he would not; that Hinkle had settled up in December, for the rent due in January, 1873; but that he did not tell him how they had settled, nor did he ask him ; that negotiations were then entered upon for the rent of the house, and that wit-ness went for Mr. Gannon, who came ; and that on that same day the applicant rented the property to the appel-lees for one month for fifty dollars, saying at the time "it would be better for both him and the appellees that the machinery should not be removed as it was likely that the party to whom the appellees might sell would want to rent the room ;" and that but for these statements appel-lees would have removed the property. On the part of the appellant, he testified himself to entire ignorance of the mortgage till 6th of January, 1873, and that he was not notified, as appellees said he was, a few days after its execution. He said he did not rent the property to the

appellees, but said to them, the machinery might stay there if they would become responsible to him for the rent which would be due from Hinkle for the month of January, if Hinkle, who had gone away on a visit, should not return, to which Gannon, on behalf of the appellees agreed, but no memorandum was made in writing of it. He also offered testimony tending to show that Gannon had admitted as a witness in a former trial between them that such was the agreement. He also testified that he did not know the endorsement was a forgery on the notes till the 8th of January, when he also first heard that Hinkle had absconded, whereupon he at once issued his distress; that it was issued to a person who had since died, and the proceedings were lost, and could not be found; but he had purchased the property in question at the sale made under those proceedings. He also offered proof tending to show that the appellees had admitted that he remained in possession till the day distress was levied. He testified that he told appellees how Hinkle had settled, viz: by endorsed notes, and that they would not be due till April.

The first five prayers of the plaintiffs below, (the appellees here,) proceed on the theory that there was evidence to go to the jury from which they might find them to be entitled to the possession of the property replevied, notwithstanding the appellant's former ownership or distress proceedings; that there is evidence from which the jury may find that the appellant sold the property to Hinkle, and that Hinkle's rights had passed to the appellees; and that the appellant was estopped from levying a distress and claiming title thereunder as against the appellees.

It is a familiar and elementary principle of law that possession and claim of title is *prima facie* evidence of ownership of personal property. 1 *Greenleaf, sec.* 34.

Here, in addition to possession, and the exercise of the highest claim of title, the right to convey and the actual

conveyance, we have the omission of the former owner, the appellant, to claim title when he knew the appellees were claiming it through Hinkle. The jury had proof, therefore, from which they could find the right to the possession in the appellees, if the appellant's distress proceedings did not give him by purchase under them a superior right. Here again the jury had evidence, which it was for them to believe or not, upon all the proof, that the appellant had told the plaintiff that Hinkle's rent was settled and he would not come on the property for it, and that when the appellees were going to remove the property from the appellant's house, that by this statement, and an agreement with reference to its storage in the house already alluded to, they were induced to leave the property there. If the jury so believed, another elementary principle in the law of estoppel would justify the jury in finding in favor of the appellees. *Herman on Estoppel, p.* 8, *sec.* 4, says: " where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things and induces him to act on that belief and to alter his own previous position, the former is estopped from averring against the latter that a different state of things existed at the same time." No doubt the appellant was badly cheated by Hinkle, and that his conduct was based on deception which be believed truth, but unless he could connect the appellees with it either by complicity or guilty knowledge, he must suffer for his mistake. It is his misfortune to have so talked, and deported himself with reference to the matter as the jury must have found that he did, on the instructions given, to conclude himself thereby. Good faith would not permit him to claim the right to distrain on the property as Hinkle's and for Hinkle's rent after the conversation narrated, assuming it truly reported. We see no error, therefore, in the granting of the plaintiff's first, second, third, fourth and fifth prayers. The sixth prayer puts the proposition that if the renting

to Hinkle was for three years and that Hinkle absconded about the 1st Jannary, 1873, before his time was up, and that then the appellant did let the premises to the appellees for one month, then he could not distrain for the rent due from the appellees till the month was out. That this prayer was properly granted needs no vindication.

The seventh prayer related to the validity of the distress proceedings, and only declared what was necessary to make the proceedings valid, namely, that the account for rent due must have stated when the rent became due and was clearly right.

The eighth prayer only declared that the appellant was not entitled to distrain till the notes fell due, which were taken for the rent, unless they should find the endorsements thereof to be forged. We did not understand the law of this prayer to be questioned. The theory of it was the basis of appellant's action in distraining as we suppose.

The ninth prayer only presents the question of estoppel in another form, and is based in a large degree upon the appellant's testimony respecting the agreement as to the occupancy of the house for one month from 1st of January, 1873, on paying $50,—that then appellees were entitled to the undisturbed possession for that month of the house, and was good even if they found the goods the property of Hinkle and not of the appellees. The principles already announced cover this prayer also and establish the correctness of the ruling in granting it.

The propositions covered by the fourth and sixth prayers of the defendant were abandoned at the hearing in this Court. The fifth prayer of the defendant, would no doubt have been granted, if there was evidence in the cause from which the jury would have been warranted in finding the hypothesis on which it proceeds of fraudulent concealment by the appellees of Hinkle's absconding, and it had not submitted to the jury to find the regularity of the dis-

tress proceedings, which alone belonged to the Court, and which defect was fatal to it. The first prayer of defendant below was clearly defective and calculated to mislead the jury, in omitting from it all the other facts which were necessary to co-exist with those stated in it to make a defence.

The law of the case, as settled by the prayers of the appellees, adjudged correct, necessarily establishes that the first three prayers of the appellant were correctly rejected.

After the granting of the appellees' prayers, and exception taken, but before argument begun to the jury, on application the Court allowed the word "persuaded" in the third prayer of the plaintiff's below to be changed to "induced," and to this ruling and action of the Court the appellant excepts in the seventh bill of exception. The Court committed no error in modifying the instruction as asked. This Court has emphatically said that the Court has power at *any time* during the trial to modify its instructions, or to revoke them altogether, if on reflection it is judged necessary. *Sittig vs. Birkestack,* 38 *Md.,* 158. Finding no error in the rulings of the Court below the judgment will be affirned.

*Judgment affirmed.*

(Decided 12th March, 1880.)