THE UNITED RAILWAYS AND ELECTRIC COM-PANY *vs.* MAMIE ELIZABETH CARNEAL, AN INFANT, BY NEXT FRIEND.

*Negligence—Injury to Child Crossing Street by Electric Car— Avoidance of Injury After Seeing Plaintiff's Peril—De-gree of Care Required of Children—Right of Trial Judge to Modify or Revoke Instructions at Any Time During Trial.*

In this action against a street electric railway company to re-cover damages for personal injuries alleged to have been caused by defendant's negligence, the evidence on the part of the plaintiff showed that the plaintiff, a little girl not quite three years old, strayed away from home one morning, and while attempting to cross a street was struck by defendant's car; that this car approached an intersecting street rapidly, on a down grade; that when the car was one hundred feet distant from the crossing the child, who had been standing on a corner, started to run across the street; that at that time, the motorman was looking at buildings on one side of the street and did not see her, and also did not see a person who was signaling to him to stop. The evidence on the part of the defendant was that the car was drifting down grade, with-out power, at a speed of about four miles an hour; that the motorman noticed the little girl standing at the far corner of the street; that when the car had reached the cross street she made a dash to run across and ran into the front of the car, which knocked her down; that the rails were slippery on ac-count of the damp weather; that as soon as the motorman saw

the child start to cross he applied the brakes, used sand and tried to stop the car and did stop it within a length and a half, and that the gong was sounded before reaching the corner. *Held,* that the plaintiff's evidence, if found to be true by the jury, is legally sufficient to entitle the plaintiff to recover.

*Held,* further, that although the plaintiff and her parents may have been guilty of negligence, yet the plaintiff is entitled to recover if the jury find that the motorman of the car, by the exercise of ordinary care, might have seen the child and stopped the car in time to avoid the accident.

*Held,* further, that the jury was properly instructed that the plaintiff was entitled to recover if the injury could have been avoided by the exercise of ordinary care on the part of the defendant, unless they find that the injury resulted from want of such care on the part of the plaintiff as ought to have been reasonably expected from one of her age, or from the want of ordinary care on the part of her parents, directly contributing to the accident.

A child is only bound to exercise such degree of care as may be expected from one of its age, and when it is seen to be about to cross a street, the motorman of a street car is required to exercise a greater degree of care to avoid a collision than is necessary in the case of an adult in a similar position.

The trial Judge has the right at any time during the trial to modify his instructions to the jury or to revoke them.

At the close of the evidence, in an action for personal injuries and after prayers had been granted, including one relating to the elements constituting the damages that the plaintiff might be entitled to recover, the trial Court stated that certain evidence relating to the possible effect of the injury had been erroneously admitted, and that, upon motion, he would exclude it. The defendant refused to make such motion, although it had objected to the admission of the evidence. Then the Court, on its own motion, modified plaintiff's granted prayer as to the measure of damages by directing the jury not to consider that effect of the injuries as testified to by a certain witness. After plaintiff's counsel began his opening address to the jury, the defendant's special exceptions to the plaintiff's prayer re-

lating to damages were given to the Court, and the Court modified the granted prayer as to damages by striking out that part relating to the industrial pursuits for which, in the absence of the injury, the plaintiff would be qualified. The Court then read to the jury the prayer as modified. *Held,* that defendant cannot complain of this modification of the instructions which were made practically at its own instance.

*Decided February 17th, 1909.*

Appeal from the Baltimore City Court (NILES, J.), where there was a judgment on verdict for the plaintiff for $7,500.

*Plaintiff's 1st Prayer.*—If the jury find from the evidence that the plaintiff was injured by being knocked down and run over by the car of the defendant, and that such injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant, or its servants or agents, then their verdict will be for the plaintiff, unless they shall find that the injury complained of resulted from the want of such care and prudence on the part of the plaintiff as ought, under all the circumstances, to have been reasonably expected from one of her age and intelligence, or from the want of ordinary care and prudence on the part of her parents, directly contributing to the accident. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The plaintiff will not be prevented from recovering in consequence of any negligence on the part of the child's mother, if the jury shall find that the motorman of the car in question, by the exercise of ordinary care and caution, might have seen the child and stopped the car in time to have avoided the accident. (*Granted.*)

*Plaintiff's 3rd Prayer.*—In considering whether there was any negligence on the part of the mother, the jury should take into consideration her condition and state in life, her ability or inabilty to provide a nurse for her child, the household duties she had to perform; and they may also consider the natural affection of a mother for her child, and her desire to shield it from danger. (*Refused.*)

*Plaintiff's 4th Prayer.*—If the jury find for the plaintiff, in estimating the damages they are to consider the health and condition of the plaintiff before the injury complained of, as compared with her present condition, in consequence of said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those industrial pursuits and employments for which, in the absence of such injury, she would be qualified, and also the physical and mental suffering to which she was subjected by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained.

*Defendant's 1st Prayer.*—That there is no evidence in this case legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant. (*Refused.*)

*Defendant's 2nd Prayer.*—That the undisputed evidence in this case shows that the negligence of the plaintiff contributed to the injury of which she complains, and their verdict must be for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—If the jury shall find from the evidence in this case that the plaintiff stepped in the way of the car of the defendant when it could not be arrested in its course and under circumstances where with ordinary care on the part of the motorman the car could not be brought to a pause early enough to save her from injury, the defendant is not liable. (*Granted.*)

*Defendant's 4th Prayer.*—If the jury believe from the evidence that the motorman of the defendant Company's car had no reason to believe that the plaintiff intended to cross in front of his car until the car was so close to the plaintiff that the accident could not have been avoided by the motorman by the exercise of the ordinary degree of care, then the defendant is not responsible for the accident, and the verdict must be for the defendant. (*Granted.*)

*Defendant's 5th Prayer.*—If the jury find from the evidence that the motorman of the defendant company's car, at or about the time of the injury to the plaintiff was acting

with usual care and prudence, their verdict must be for the defendant. (*Granted.*)

*Defendant's 6th Prayer.*—The burden of proof is upon the plaintiff to show that the injury complained of was caused by the want of ordinary care on the part of the defendant or its employees, and unless the jury shall be satisfied by the preponderance of testimony that the injury complained of was directly caused solely by the want of ordinary care on the part of the defendant or its employees, the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant. (*Granted.*)

*Defendant's 7th Prayer.*—That there can be no recovery in this action unless the jury find from the evidence that the plaintiff has affirmatively shown by a fair preponderance of testimony that the accident was caused through the negligence of the defendant, and the jury are instructed in determining whether or not the defendant was guilty of negligence that the law makes no unreasonable demand, and that it will not consider the defendant as guilty of culpable negligence in failing to take precautions which in the opinion of the jury no man of ordinary prudence would have taken under the circumstances. (*Granted.*)

*Defendant's 8th Prayer.*—That the infancy of the plaintiff does not change the degree of care and diligence to be used by the defendant in the manipulation of its cars. (*Refused.*)

*Defendant's 9th Prayer.*—If the jury find from the evidence that the parents or person in charge of the plaintiff at or about the time of the happening of the accident were negligent in their care of the said plaintiff, and that the negligence directly contributed to produce the accident mentioned in the evidence, then there can be no recovery in this case, and the verdict of the jury must be for the defendant. (*Refused.*)

And thereupon the Court stated in open Court that its ruling, made earlier in the trial, in permitting Dr. Rumsey to testify in the plaintiff's behalf, that the injuries sustained by

the plaintiff might possibly affect her in the event of child-bearing was, he now thought, too broad and was erroneous, and suggested to defendant's counsel to move to strike out said evidence admitted over its objections, and that thereupon the Court would grant such motion and exclude such testimony from the consideration of the jury.

But the defendant's counsel refusing in open Court to make such motion, the Court thereupon of its own motion modified the plaintiff's fourth prayer by adding thereto the following words:

"But the jury are not to award any damages for any injuries except those proved by the evidence with a reasonable certainty, and the testimony of Dr. Charles L. Rumsey as to the effect of the injuries to the pelvis testified to by him upon child-bearing by the plaintiff is too vague to be considered by the jury."

The defendant's counsel, having then completed the special exceptions, handed the same to the Judge at or about the time when the plaintiff's counsel arose to address the jury, as follows: The defendant specially excepts to the granting of the plaintiff's first prayer for the reason that there is no legally sufficient evidence of negligence on the part of the defendant or its employees.

2nd. That there is no evidence legally sufficient to show that such injury might have been avoided by the exercise of ordinary care and prudence on the part of the defendant or its servants or agents.

3rd. Because it submits a question of law to the jury, as it does not limit the time when the motorman should have attempted to stop his car and the jury may speculate or determine in any way as to when the motorman should have attempted to stop his car. (*Overruled.*)

The defendant specially excepts to the granting of the plaintiff's second prayer for the reason that there is no evidence that the motorman of the car in question by the exercise of ordinary care and caution might have seen the child

and stopped the car in time to have avoided the accident. (*Overruled.*)

· The defendant specially excepts to the granting of the plaintiff's fourth prayer:

1st. Because there is no legally sufficient evidence of any industrial pursuits and employments for which in the absence of such injury she would be qualified.

· 2nd. Because there is no legally sufficient evidence to show what industrial pursuits and employments for which in the absence of such injury she would be qualified. (*Granted.*)

And thereupon plaintiff's counsel made his opening address to the jury; and after he had closed his opening argument, the Court stated that he had not understood that the point brought out in the defendant's exception to the plaintiff's fourth prayer was intended to be made, but that he thought that this exception should be granted. The Court therefore overruled the defendant's special exceptions to the plaintiff's first and second prayers and granted the defendant's special exception to the plaintiff's fourth prayer, and modified the plaintiff's fourth prayer by striking out from the prayer as modified and granted and read to the jury, the following words: "and how far it is calculated to disable the plaintiff from engaging in those industrial pursuits and employments for which, in the absence of such injury, she would be qualified." The Court stated to the jury that he would read to them the prayer as modified and corrected by him and accordingly read to the jury the plaintiff's fourth prayer as modified, as follows: "If the jury find for the plaintiff, in estimating the damages, they are to consider the health and condition of the plaintiff before the injury complained of as compared with her present condition, in consequence of said injury, and whether said injury is in its nature permanent, and also the physical and mental suffering to which she was subjected by reason of the said injury, and to allow such damages as in the opinion of the said jury will be a fair and just compensation for the injury which the plaintiff has sustained. But the jury are not to award any damages for any injuries except

those proved by the evidence with reasonable certainty and the testimony of Dr. Charles L. Rumsey as to the effect of the injuries to the pelvis testified to by him upon child-bearing by the plaintiff is too vague to be considered by the jury."

To which action and ruling of the Court in overruling the defendant's special exceptions to the plaintiff's first and second prayers and each of them, and to the granting and reading to the jury of the plaintiff's fourth prayer (as modified the second time), the defendant then and there excepted.

The cause was argued before Boyd, C. J., Pearce, Schmucker, Burke, Thomas, Worthington and Henry, JJ.

*J. Pembroke Thom* and *Albert E. Donaldson,* for the appellant.

It is nowhere held that a motorman must stop or even slow up his car when he observes a person standing still on the sidewalk or in the street to the side of the track giving no evidence of any intention to cross the track. *Balto. City Pass. Ry. Co.* v. *Cooney,* 87 Md. 261; *Stabnew* v. *At. Ave. R. R. Co.,* 155 N. Y. 511; *Holdrige* v. *Mendenhall Recr.,* 108 Wis. 1; *Kline* v. *Traction Co.,* 181 Pa. 280; *Heying* v. *United Rys. Co.,* 100 Md. 283; *McNab* v. *United Rys. Co.,* 94 Md. 719.

In the cases just cited it is held that a railway company is liable if the motorman could have avoided the accident after he saw or ought to have seen the plaintiff's peril. This modification of the general rule was fully considered in *Consolidated Railway Co.* v. *Armstrong,* 92 Md. 554, where it is said: "But in order that this qualification of or exception to the general rule may be successfully invoked by the plaintiff, he must show knowledge on the part of the defendant, or its agents, of the peril in which he (the plaintiff) was placed, and that there was time after such knowledge within which to make an effort to save him from impending danger."

This being the law, it was incumbent on the plaintiff here to prove that at the time the infant plaintiff left the pavement and started across the street the car was far enough away to have been stopped by the exercise of due care in time to have avoided the injury.

The defendant's testimony clearly proved that the infant plaintiff was in a place of safety on the pavement, at the southeast corner of St. Paul and Twenty-third streets, and that she started to cross the street when the front of the car was in the middle of Twenty-third street; and that the motorman did all in his power to stop the car, the moment she started across. The fact that he did stop the car when the rear platform was opposite the crossing, is borne out not only by the defendant's testimony, but by the plaintiff's, and this certainly shows the utmost effort on his part. There is not a scintilla of evidence to show that from the moment the infant plaintiff left the pavement, the motorman of the defendant's car did not do all in his power to avoid injuring her.

From the testimony of the plaintiff's witnesses, it is not possible to say where the car was when the child started across the street, but if it proves anything at all, it does prove that the car was close upon her.

The colored man, Lewis, stated positively that he did not know where the car was when the child started, but that the car was close upon the child is clearly apparent from his evidence, for he says that she screamed when she started to run, and, to quote his own words: "I said that child is gone, and almost in the time I could say that the car had struck her."

Even if we should take the view that Mrs. Miller saw and was speaking about, the car concerned in the accident, and not another car, and that her opinion of the speed was correct— still there is not a scintilla of evidence that if the car had been going at an ordinary speed, or even as slow as four or five miles an hour, that it could have been stopped on a down grade with a slippery track; or even that with the rail, in good condition, the car could have been stopped in time to

have avoided the accident. And upon her testimony the defendant's first prayer should have been granted. *C. & P. R. R.* v. *State,* 73 Md. 74; *Reidel* v. *P. W. & B. R. Co.,* 87 Md. 153; *Hoffman* v. *Syracuse R. T. Co.,* 50 N. Y. App. Div. 83; *Molyneaux* v. *S. W. Mo. E. R. Co.,* 81 Mo. App. 25.

· We know of no case held to have been properly submitted to the jury, in which there has not been some evidence of the relative positions of the injured person, and the car, when the peril to the person became apparent, while in the case at bar there is an absolute failure of evidence on the part of the plaintiff as to the location of the car when the peril of the plaintiff could have been seen.

That the child ran into the side of the car is shown by Lewis' testimony. In addition to this, we have the positive statements of the motorman and Murray, that the child ran into the side of the car. There was no evidence of any negligence in the operation of the car, or that it was running at an unlawful speed.

· The plaintiff failing to show any negligence on the part of the defendant, and the defendant clearly proving itself free from negligence, the case should not have been submitted to the jury. The only evidence as to where the car was when the infant plaintiff started from the sidewalk, was given by the defendant, and the plaintiff did not even attempt to show that the car could have been stopped in any shorter distance than it was. *Siacik's Admr.* v. *N. C. Ry. Co.,* 92 Md. 213; *Egner* v. *United Rys.,* 98 Md. 400.

· Defendant's second prayer should have been granted. The action of the child must be regarded as negligent, unless the view is taken that a child of that age is incapable of negligence. For, as was said by this Court in *Cumberland* v. *Lottig,* 95 Md. 42, where a child came in contact with a wire on a roof: "If he was too young to know of the dangerous character of the wire, his mother's negligence must be imputed to him, and if he was old enough to know better than to take hold of the wire, his own negligence would be fatal to his case."

If we take the view that the child was incapable of negligence, then her parents or custodians were negligent in allowing her to be upon a city street where trolley cars and numerous other vehicles were passing, and their negligence directly contributed to the accident, and there being no evidence that the car could have been stopped after the child should have been seen in dangerous proximity to the car, this prayer should have been granted. *B. & O.* v. *State use of Fryer,* 30 Md. 47; *Cumberland* v. *Lottig,* 95 Md. 42; *Waite* v. *N. E. Ry. Co.,* 96 Eng. Com. Law, 711, affirmed 96 Eng. Com. Law, 728; *Lifschitz* v. *Dry Dock Co.,* 67 App. Div. (N. Y.) 602; *Gibbons* v. *Williams,* 135 Mass. 333; *Wabnich* v. *Dry Dock, etc., Ry. Co.,* 112 App. Div. (N. Y.) 4.

By granting the plaintiff's first prayer the jury were allowed to find for the plaintiff if they believed the accident could have been avoided by the exercise of ordinary care and prudence on the part of the defendant *at any time.* Such is not the law; it was only after the motorman saw or could have seen the peril of the infant plaintiff that the duty was imposed.

Under this instruction the jury were entitled to find for the plaintiff if the motorman might have seen the child when his car was a square away, even though at that time the child was standing still on the pavement. They should have at least been instructed that it was only after the motorman might have seen the child *approaching the track* or *in a position of peril* that the duty to exercise care and caution to avoid injuring her arose. We contend that even in the form we have suggested the prayer would be improper; as it stands it is clearly erroneous.

There was not only no evidence to support plaintiff's second prayer, but it is erroneous for the further reason that no duty rests upon the motorman of a street railway car to stop it when he sees a person on the sidewalk giving no evidence of an intention to cross. If such were law the operation of railways would be impossible. The duty never arises except when the person is *approaching the track* or *is in a position of peril.*

*Baltimore Traction Co.* v. *Wallace,* 77 Md. 435; *North Balto. Pass. Ry.* v. *Arnreich,* 78 Md. 589; *Baltimore City Pass. Ry.* v. *Cooney,* 87 Md. 261; *Consolidated Ry. Co.* v. *Rifcowitz,* 89.Md. 338.

This prayer amounted to a modification of the rule of contributory negligence, and the modification therein contained is substantially the same as was condemned in the case of *Consolidated Ry. Co.* v. *Armstrong,* 92 Md. 554; *P. & B. R. Co.* v. *Holden,* 93 Md. 421.

The defendant's eighth prayer should have been granted in connection with its other prayers. It contained a correct proposition of law, as will be seen by reference to the case of *Bannon* v. *B. & O. R. R.,* 24 Md. 108.

By the plaintiff's second prayer the jury were told that if they found that the motorman, by the exercise of ordinary care and caution, might have seen the child and stopped the car in time to have avoided the accident, the negligence of the mother would not prevent a recovery. Certainly, the defendant was entitled to have the jury instructed in this connection; that the infancy of the plaintiff does not change the degree of care and diligence to be used by the defendant in the manipulation of its cars.

Containing, as it did, a correct proposition of law, the defendant was further entitled to this instruction upon the ground that "the Court will always instruct the jury, if applied to, as to the degree of diligence or skill and care which the law imposes upon the respective parties, and the jury are to determine if the requisite conduct has been observed." *C. & P. R. R. Co.* v. *State,* 37 Md. 156-169; *Balto. Trac. Co.* v. *State, use of Ringgold,* 78 Md. 426.

. The defendant's ninth prayer contained a correct statement of what is known as the law of imputed negligence. *B. & O.* v. *State, use of Fryer,* 30 Md. 47-53; *Cumberland* v. *Lottig,* 95 Md. 42-48; *Waite* v. *N. E. Ry. Co.,* 96 Eng. Com. Law, 719, affirmed 96 Eng. Com. Law, 728; *Lifschitz* v. *Dry Dock Co.,* 57 App. Div. (N. Y.) 602-3; *Wabnich Case,* 112 App. Div. (N. Y.) 4.

This young infant was injured while on a public thorough-fare, unattended, which of itself was *prima facie* evidence of negligence. "The child was injured while unattended in the highway. This alone would be *prima facie* proof that she was exposed through the negligence of her mother, under whose charge she was, and that that negligence contributed to her injury (*Wright* v. *R. R.,* 4 Allen, 283), but it would not be conclusive upon either point. The plaintiff could show that the negligence of the mother did not contribute to the injury by proving that the child did not in fact do or omit any act in the occurrence, which common prudence forbade or required." *Gibbons v. Williams,* 135 Mass. 333.

Not only was this *prima facie* proof not rebutted by her mother, but the jury might well have inferred from the testimony of Mrs. Carneal that she or the person in charge of the child was negligent in the care of the infant plaintiff in allowing it to run at large upon a street where electric cars and numerous other vehicles passed. Her testimony was as follows: "On the morning of the accident she was sewing, and left two of her children, one of whom was Mamie, playing around the kitchen door and in the yard. The younger one became sleepy and she took her upstairs and put her to bed, and when she came down she missed Mamie and inquired of the nurse where she was. The nurse thought the child had gone upstairs, but the witness knew she had not, and seeing the back gate open, rushed out and was told there had been an accident."

That there was evidence to support this prayer is conceded by the plaintiff's second prayer. Surely it is a poor rule which does not work both ways, and if the plaintiff was granted an instruction that the negligence of the child's mother would not prevent a recovery if the jury found that the motorman could have avoided the consequences of her negligence (which latter part of the prayer was specially excepted to), the defendant was entitled to a corresponding instruction that if the jury found that the negligence of the parents or those in charge of

the child was the direct cause of the injury, then there could be no recovery.

The question in the first exception should not have been allowed. Striking out the answer would not cure the evil done. *Rosenstock* v. *Tormey,* 32 Md. 170-182. Even if it were possible to think that striking out the answer would be sufficient, the Court did not strike it out, but invented a method of its own.

The Court modified the plaintiff's fourth prayer in regard to the testimony of Dr. Charles L. Rumsey excepted to in the defendant's first exception. This was surely an unusual method of procedure and could not but be prejudicial to the defendant in that it emphasized Dr. Rumsey's testimony, and brought it forcibly to the minds of the jurors, rather than excluding it from their consideration. The usual method a Court pursues to accomplish the result which the Court herein intended to accomplish, is for the Court to strike out the evidence from the record and instruct the jury not to regard the same. But in this instance the Court failed to do so, leaving the evidence in the record and modifying a long damage prayer by a statement to the jury that the evidence was too vague to be considered by them.

The Court did not wait until the defendant's counsel could prepare special exceptions to the plaintiff's prayers before argument to the jury.

The defendant's counsel stated to the Court that he wished to prepare and file special exceptions to the plaintiff's prayers. The Court then stated that he supposed these special exceptions were the usual formal exceptions, and, if so, he would not delay the case, but pass upon the prayers at once, giving the defendant leave to reduce its special exceptions to writing later, and there being no dissent or objection to this course (and certainly there was no reason for dissent or objection to the Court's statement, there being nothing unusual or informal in the special exceptions), argument was heard, and after such argument, the Court granted the plaintiff's first and second prayers, and, of its own motion, modified the plaintiff's

fourth prayer by adding thereto the following words: "But the jury are not to award any damages for any injuries except those proved by the evidence with a reasonable certainty, and the testimony of Dr. Charles L. Rumsey as to the effect of the injuries to the pelvis testified to by him upon child-bearing by the plaintiff is too vague to be considered by the jury," and granted the said prayer as thus modified. The Court then read both sets of prayers to the jury.

The special exceptions in the usual form were presented to the Court and acted upon by him, and the fourth prayer was again modified. The Court then did not simply tell the jury that he had modified a prayer or the prayers, or read then all of the instructions anew, but waited until the end of a moving address by the plaintiff's counsel, and then read to the jury the damage prayers as modified the second time. Surely this would naturally tend to mislead the minds of the jury and lead them to believe that the only thing for them to consider was the amount of the damages, and to lead them to disgard the important question as to whether the defendant was the cause of the injuries, especially as the form of the prayer is such that it practically assumes that there will be a verdict for the plaintiff.

*William Colton* and *John Philip Hill,* for the appellee.

It will be observed by inspection and comparison of the plaintiff's first and second prayers that the language is precisely the same as the first and third prayers approved in *City Pass. Ry. Co.* v. *McDonnell,* 43 Md. 535.

If, therefore, the facts of the case at bar and the *McDonnell Case* are practically the same, the law of the appellee's case announced in said first and second prayers must be free from error.

The defendant's eighth and ninth prayers were properly refused, because the propositions announced therein were fully covered by the plaintiff's said first and second prayers, and the multiplicity of prayers substantially the same on subjects about which the law has been thoroughly well settled is a prac-

tice much to be deprecated. *Agricultural & Mechanical Association of Washington County* v. *State of Maryland, etc.,* 71 Md. 99. When the whole law of the case has been fairly submitted to the jury by the instruction actually given, a refusal to grant other prayers which reiterates the same principle in different words is not erroneous. *Storr* v. *James,* 84 Md. 282; *McCarty* v. *Harris,* 93 Md. 742.

If, however, it may be contended that defendant's eighth and ninth prayers are not covered by plaintiff's said first and second prayers, then defendant's said prayers are misleading and otherwise erroneous and were properly refused.

It is difficult to understand just how the learned counsel for the appellant may seriously argue in support of the propositions announced in appellant's first and second rejected prayers, and the several exceptions indicated, in respect of the plaintiff's first and second prayers.

The testimony of the witness Mrs. Miller and the colored man Lewis tends to show that on the day of the accident to the little plaintiff the appellant's car moved rapidly south on St. Paul street, a much-traveled public thoroughfare of Baltimore City, the head of its motorman being so directed that it was quite impossible for him to observe any object upon its tracks in the bed of said thoroughfare while crossing said Twenty-third street; that the persistent attempts on the part of Mrs. Miller to attract his attention whilst standing at the northeast corner of St. Paul and Twenty-third street, so that she might take passage on his car, were wholly unavailing; that although the appellant's car was a hundred feet or about one hundred feet north of Twenty-third street, at the time the little plaintiff started to run from the northeast to the southwest corner of said St. Paul and Twenty-third streets, he failed to see her, and the car he was operating knocked her down and ran over her as she approached said southeast corner, the screams which she continuously uttered from the time or about the time she left said northeast corner, while running diagonally, as indicated, being unheard by him.

Had the motorman directed his attention in front of his car, he would have been able to observe not only the little plaintiff, as she ran from the northeast to the southwest corner of St. Paul street, at Twenty-third street, but also Mrs. Miller when she signalled unto him.

The action of the appellant because of the modification of the appellee's fourth prayer is extraordinary—unprecedented. In effect, its position is that it asks the Court for a ruling in its favor along indicated lines, and when the Court grants such application, refuses to accept the result it sought to accomplish by such application.

HENRY, J., delivered the opinion of the Court.

This is an appeal taken by the defendant below from a judgment for $7,500 rendered against it in the Baltimore City Court in an action by the appellee to recover damages for personal injuries sustained in an accident which occurred March 14th, 1907, at the corner of St. Paul and Twenty-third streets, in the City of Baltimore, and which it is charged in the declaration was the result of the negligence of the defendant, without any negligence on the part of the plaintiff directly contributing thereto.

In the Court below three exceptions were taken by the appellant, the first to the admissibility of certain testimony, and the second and third to the action of the Court upon the prayers offered by the litigant parties.

The first prayer of the defendant offered at the close of all the testimony, being in the nature of a demurrer to the evidence, brings up for review the testimony in the case.

The plaintiff was a female infant, not quite three years of age, who had slipped away from her mother's home at 2234 North Calvert street, and had strayed from thence to the corner of St. Paul and Twenty-third street. The only eyewitness of the accident produced on the part of the plaintiff was William A. Lewis, a colored wagon driver, whose testimony it is important to consider.

In his examination in chief this witness states: "On this morning I had on a load of furniture going up the right-hand side of St. Paul street, about 20 feet south of Twenty-third street, when I saw this car coming, and I saw this little child start from that corner, which, I guess, is the northeast corner, to the southwest corner, and I saw this car coming at a good speed, and I said that child is gone, and almost in the time I could say that the car had struck her, and I thought it had cut her in half; and I got so nervous I didn't know what I was doing. I saw a lady standing on the corner trying to wave the car down in the first place, but the car didn't stop, and this man didn't seem to see anyone, as he was looking towards to the college." The college referred to by this witness is the Woman's College, located on the west side of St. Paul street, between Twenty-third and Twenty-second streets, and which was to front and right of the car as it was going south down St. Paul street.

The witness further testified that when he first saw the car it was about 100 feet north of Twenty-third street; that it passed Twenty-third street pretty rapidly, but after the accident stopped about twenty-five feet south of said street. On cross-examination this witness stated that when he first saw the car it was about 100 feet north of Twenty-third street, and at that time the child was "standing still" on the northeast corner of St. Paul and Twenty-third streets, and he could not tell how far the car had gone from this point, 100 feet above Twenty-third street, when the child started to cross the street. The witness first saw the motorman when the car struck the child, at which time his head was turned to the right and he had "one hand on one thing and one hand on another," but didn't see him winding down, and also stated that the child, the instant she started from the pavement, began to scream.

Mrs. J. R. Miller, another witness on the part of the plaintiff, stated that she was on the northeast corner of St. Paul and Twenty-third streets, but did not see either the child or the accident. She wanted to board the car and signalled the conductor to stop, but his attention seemed to be turned

toward the college and he didn't appear to see her, and that the car was going very rapidly.

On behalf of the defendant Hoffman, the motorman, testified: "Just as I was crossing the corner I noticed the child standing on the southeast corner of St. Paul and Twenty-third streets, and as my car got near, the front end very near the middle of the street, this child made a full dash and ran across the street and ran against the front side of the car, and it knocked her down." He further said that the car was drifting down grade, without power, at a speed of about four miles an hour; that the rails were slippery from the damp and misty weather, and that he applied the brakes and used sand and made every effort to stop the car as soon as he saw the child start to cross, and that he succeeded in stopping the car in about a length or a length and a half. That he sounded the gong coming down St. Paul street before he got to the corner.

Matthews, the conductor, corroborated the motorman as to the speed of the car and the sounding of the gong.

David G. Murray, another witness on behalf of the defendant who saw the accident, testified that when the child started to cross the street from the southeast corner the car was about midway of Twenty-third street, going at a moderate speed, and that it seemed to him that the child ran into the car rather than the car running into the child.

Mrs. Geneva S. Conrad testified that the car was going at a moderate speed, evidently slowing down for the crossing.

Nelson Lloyd also saw the accident, and testified that the car was going at a moderate speed; that the child started to cross the street when the car was half a length from her, and that the motorman seemed to do all he could to stop the car, but that the child ran right in front of it.

In consideration of the first prayer of the defendant, we must assume that the plaintiff's evidence, although contradicted by that of the defendant, is true, and, so assuming, we think it was sufficient, as tending to show negligence on the part of the defendant, to take the case to the jury.

Courts are cautious not to invade the province of the jury, and, although the question of negligence may become a matter of law, the circumstances of the case must be clear and decisive to justify a withdrawal of the case from the consideration of the jury. *McMahon* v. *N. C. R. R. Co.,* 39 Md. 438; *Consolidated Railway Co.* v. *Rifcowitz,* 89 Md. 338; *B. & O. R. R. Co.* v. *State,* 36 Md. 366; *Cumberland Valley R. R. Co.* v. *Maugans,* 61 Md. 60.

As to the defendant's second prayer we think likewise that it was properly refused. In spite of the negligence of the plaintiff or of the parents of the plaintiff, lawfully imputable to her, she was still entitled to recover unless the jury should find that after the motorman saw, or could have seen, her peril he could not, by the exercise of ordinary care, have avoided the accident. So far as her conduct was concerned she could only be held to such a degree of care as might be expected from one of her age and intelligence. According to the testimony, the defendant was 100 feet away when he could have seen the infant on the street corner, and though the principal witness could not fix the distance that the car had proceeded from this 100-foot point when the plaintiff assumed a position of peril by starting to cross the street, yet under the general statement made we think it might well have been left to the jury to say if, in the exercise of ordinary care and caution, the motorman should not have brought his car to such a degree of locomotion as would have enabled him to stop the same after seeing the peril of the plaintiff, it being his duty under all circumstances to have his car under better control at a street corner, where pedestrians usually cross, than in the middle of the block.

The evidence on the part of the plaintiff failed to locate the relative positions of the car and the child at the time the latter started to cross the street, but by several witnesses the defendant proved that the car was about midway of Twenty-third street when the child started to run across St. Paul street. The point of collision was about twenty-one feet from the curb near which the child had been standing, and about

twenty feet from the point where the motorman first saw the child. In an adult, or a youth of maturer years, an attempt to cross under such conditions would have presented a different question for the consideration of the Court. But ordinary care is a relative term. The same standard is not expected of an infant as of a mature man. What would be regarded as careless and blameworthy in the one would not be necessarily so held in the case of the other. Each case must depend upon its own circumstances. In the case of *Consolidated Railway Co.* v. *Rifcowitz,* 89 Md. 338, a woman was injured at a street crossing by collision with a car. The car tracks were only six feet from the curb from which the woman started to cross and the car was only fifteen feet away, although the woman testified that she looked before attempting to cross and saw no car coming. The car was going ten or eleven miles an hour. The Court declined to take the case from the jury on the theory that the car was going at a rapid speed, which should have been slackened as the crossing was approached, so that it might have been stopped promptly in case of necessity. In the case under consideration there is some evidence to show that the car was going "very rapidly" and that the motorman could have seen the child when 100 feet away; that he was not looking ahead, but to the side of the car. Without passing upon the weight of this evidence, when contrasted with the evidence of the defendant, or intimating an opinion upon the verdict rendered, we think the question of contributory negligence was properly left to the jury. *Booth* v. *McLean Contracting Co.,* 108 Md. 456; *North Balto. Pass. Ry. Co.* v. *Arnreich,* 78 Md. 589; *McMahon* v. *N. C. R. R. Co.,* 39 Md. 438; *McDonnell's Case,* 43 Md. 535; *Wright* v. *M. & M. R. R. Co.,* 4 Allen Rep. (Mass.) ; *Gibbons* v. *Williams,* 135 Mass. 333.

The plaintiff's first and second prayers correctly state the law in the case. They are reproduced from *McDonnell's Case, supra,* in which the facts are so similar as to make the same law applicable.

The rejection of the eighth and ninth prayers of the defendant we think was proper. By its sixth and seventh

prayers, which were granted, the question of ordinary care was submitted in as favorable an aspect as the defendant could demand, and the eighth prayer was misleading because, as we have already stated in discussing the evidence, the child was only bound to the exercise of such care as might be expected from one of her age and intelligence, and when such an infant is negligently on the street, and her situation at a street corner is apparent, a correspondingly greater degree of care was demanded of the defendant to avoid accident than would have been required in the case of an adult. While the prayer as an abstract proposition may be correct, yet it would be misleading if applied, in the manner offered, to the facts of this case.

The defendant's ninth prayer was also properly refused. The law on this point having been stated in the plaintiff's second prayer, it could not have been granted without such modification as would harmonize the two prayers.

The first and third bills of exception, which involve the same question, may be discussed together. After the prayers had been offered, the Court announced that certain testimony of one of plaintiff's witnesses, bearing on the subject of injury and consequent damage, admitted against the objection of the defendant, had been erroneously admitted and suggested to defendant's attorney to move that it be stricken out, but said attorney declining to do so the Court modified the fourth prayer of the plaintiff so as to exclude consideration of the objectionable testimony. After the opening argument of the plaintiff's counsel to the jury, the Court further modified this fourth prayer, in conformity with a special exception which had been filed thereto by the defendant, and read the prayer as modified to the jury. While it is undoubtedly true that a trial Judge, because of his high and authoritative position, should be exceedingly careful in any remarks made by him during the progress of a trial, either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should

be left to the finding of the jury, yet this Court has frequently said that a Judge may at any time during the trial modify his instructions, or revoke them altogether, if convinced of error in a previous ruling. In the present case, though the proceedings were irregular, the modifications were practically at the instance and for the benefit of the defendant, who should not now be heard to complain. *Coffin* v. *Brown,* 94 Md. 190; *Butler* v. *Gannon,* 53 Md. 333; *Sittig* v. *Birkestack,* 38 Md. 158.

The judgment of the lower Court will be affirmed with costs.

*Judgment affirmed with costs.*

WORTHINGTON, J., dissented.