This is the second time this case has been before us. The first appeal was at the instance of the appellee, and is reported in149 Md. 443, and was on an exception to the granting by the trial court of the appellant's (then appellee's) first, third, sixth, and ninth prayers. The ruling on the sixth prayer was reversed and it has been excluded from the present record. The rulings on the other three prayers were sustained by this Court, and they appear in the present record as the only prayers granted by the trial court, and are respectively designated as the defendant's first, third, and sixth prayers. The other prayers in the former record were all rejected by the trial court and are the subject of the second exception in the present appeal. The prayers of the appellant are designated A, B, C, D, E, F and G, and first to sixth inclusive, of which the first, third, and sixth were granted and the others rejected. We find no substantial or material difference in the evidence at the former trial and in the present case, and for this reason see no need to review all the facts here, and shall confine ourselves to such evidence as we deem necessary to explain our views of the prayers before us.
In the first appeal, although the prayer to take the case from the jury had been rejected and the appeal taken on the *Page 122 
granting of four prayers of the defendant (appellant now), the appellee presented its case to this Court on the theory that, although the court had rejected its prayers for a directed verdict, the judgment below should have been affirmed because the prayers for a directed verdict should have been granted, and if so, it made no difference whether there was error in the instructions granted on which the plaintiff (appellant then and appellee now) appealed. This Court then held, on the whole evidence (149 Md. p. 455), there was enough in the evidence to which we have referred to take the case to the jury. Adhering to the same opinion, based on what we regard as substantially the same evidence, the A, B, C, D, E, F and G prayers of the appellant, all of which asked for a directed verdict, were properly rejected.
The C prayer of the appellant asked the court to declare as a matter of law that the four and one-half years old Paul Kolish "was guilty of negligence directly contributing to the happening of the accident." The appellant said: "The approval of this court of the denial of that prayer would be contrary to its ruling inSullivan v. Smith, 123 Md. 546." We do not understand that we are overruling or qualifying the decision in that case. There the plaintiff, a girl of seven years, came from behind a wagon and was struck by an automobile. The driver saw her, instantly swerved his car to the left, doing everything he could to avoid striking her. In this case the motorman was going east on a street 66 feet in width, with side-walks of 13.5 feet, leaving 39 feet from curb to curb, on which was a double track railway, the outer rails of each track being 12.15 feet from the curb, the tracks 10 feet from center to center. There was evidence on the part of the appellee that the car was running from 12 to 18 miles an hour, the appellant's evidence being that it was running 8 miles an hour. The motorman testified that he did not see the boy who was struck by his car until after a colored boy yelled at him and he stopped the car and found the child under the left front truck. He stated that he stopped the car within eight or *Page 123 
ten feet after his attention had been so attracted; had not seen any children running across the street; did not see Cohen standing in the westbound track waiting for the car to pass. Cohen testified that he was standing there at the time with his helper, a colored boy beside him, each of them with a case of soda water bottles on his shoulder, and a boy four and one-half years old ran by them on to the eastbound track, and the motorman, who said, "I am out there tending to my business. * * * Looked right up the street," and who, fifty feet further on, after applying the air, stopped in eight or ten feet, did not see any of them. The chauffeur in Sullivan v. Smith, supra, did everything he could to avoid the accident. The motorman here testified that he did not see the boy, and evidently did not look, otherwise he would have seen the boy, Cohen, and his helper.
The F and G prayers of the appellant respectively asked the court to declare as a matter of law that the father and mother of the boy who was killed were guilty of such negligence in allowing their boy to be on the street unattended as would disentitle them to recover. Our attention has only been directed to one case in this state, wherein this Court has declared as a matter of law that the plaintiff was not entitled to recover when injured while in the custody of the parent, viz. Cumberland v. Lottig,95 Md. 42. That case is not this. In the Lottig case Judge Fowler drew the distinction between it and a case in principle like the one before us, and that is whether, at the time of the accident the injured party was in a place where he had a lawful right to be, or where it was proper for him to go. The Lottig boy was injured by taking hold of an electric wire crossing over, and eighteen inches above, a roof to which he had been taken by his mother at night for the purpose of looking into and through the windows of a theatre across the street. "Can it be said that the plaintiff and his mother, as was said of Nelson in Western Union Tel. Co.v. Nelson, 82 Md. 293, were upon a public highway, or in a place where the defendant supposed they would ever go, or that *Page 124 
they were acting in a proper manner?" A street railway company "is bound to take notice of and recognize and respect the rights of every pedestrian or other traveler." Cooke v. Balto. TractionCo., 80 Md. 554; Balto. City Pass. Ry. v. McDonnell,43 Md. 553. So far as the child is concerned, it could not be required to exercise any higher degree of care than might be expected of one of his years. United Rys. Co. v. Carneal, 110 Md. 232;McMahon v. North. Cent. R. Co., 39 Md. 438; Balto. O.R. v.Fryer, 30 Md. 51. The great weight of authority is opposed to the proposition that a child a little over four years of age can be guilty of contributory negligence. State, use of Kolish, v.Wash., B. A.R. Co., 149 Md. 459.
Eliminating, then, the child from the charge of contributory negligence, what degree of care is required of the parents? It is undisputed that at the time of the accident the father, who is the equitable plaintiff, was at his work and that the children were in the care of the mother. They lived in a densely populated section of South Baltimore, in a block where the average house was fifteen feet in width; houses solidly built; in some instances a family to each floor. The street was the play ground. A few minutes before the accident the mother and the boy were on the steps, which projected on the sidewalk. Her two months old baby began to cry. She went into the house to look after the baby and was gone five or six minutes. When she came out, after that short time, her boy had been killed. When she left her boy on the steps to go to her baby, had she thereby so contributed to the death of the boy as to preclude a recovery? "Courts are cautious not to invade the province of the jury, and, although the question of negligence may become a matter of law, the circumstances of the case must be clear and decisive to justify a withdrawal of the case from the consideration of the jury."United Rys. Co. v. Carneal, 110 Md. 230; Balto. O.R. Co. v.Belinski, 106 Md. 455. A case almost identical in its facts with the instant case was that of Del Rossi v. Cooney, 208 Pa. 233, where the court, quoting with approval from Shearman Redfieldon Negligence (5th Ed.), par. *Page 125 
72, said: "In an action by the parent or master, * * * it is to be remembered that he must be actually in fault in order to bar his recovery on the ground of his contributory fault. Where a parent or guardian has done all which can reasonably be expected of one in his circumstances, he is not debarred from recovery by the mere fact that he has not thrown as many restraints around his child for its protection as would be reasonably expected from parents having more means at their command." We are of the opinion that the question of contributory negligence of the parents was for the jury, and the F and G prayers were, therefore, properly rejected.
The appellant's second prayer asked the court to instruct the jury that there was no evidence "legally sufficient to show that the motorman saw, or could by the use of ordinary care have seen, the peril of the boy in time to have avoided the accident mentioned in the declaration." This prayer contains the same proposition as the appellant's D and E prayers, except that the latter ask for a directed verdict, and the second prayer, if granted, would have had the same effect. They are variance prayers based on the contention of the appellant that this Court in the former appeal held that the doctrine of last clear chance did not apply, and that the appellee had declared "on the doctrine of last clear chance." The declaration states that "while the said Paul Kolish * * * was rightfully and carefully walking upon and across said Portland Street, at or near its intersection with Emory Street aforesaid, and who, by the exercise of ordinary care on the part of the agents, servants and employees of the defendant corporation, was or could have been seen by them crossing the said intersection of said public highways in time to have avoided striking the said Paul Kolish, a car of the defendant corporation, then and there being operated by its said agents, servants, and employees, struck, knocked down, and ran over the said Paul Kolish." There is no admission here that the boy or his parents were guilty of contributory negligence, which is present before the plaintiff can claim a recovery on the ground that he was not given his last clear *Page 126 
chance to escape injury. The declaration says the boy was "rightfully" not wrongfully in the street. In the first appeal, Judge Offutt (149 Md. 456), speaking for this Court, said: "It is difficult to understand why the motorman who was able to see both sides of the street ahead of and on each side of him was unable to see the little boy. The child obviously must have been in the street outside the tracks, or inside the tracks, near the front of the car, just before it struck him, for there is evidence that he was hit by the front fender, which is in front of the front steps, and he could scarcely have reached that position unless at some time before he came in contact with the car he could have been seen by the motorman had he been exercising the vigilance required of him under the circumstances. And for the motorman to have operated his car along a city street where small children were at play, at such a speed and without any warning of its approach, without constantly watching to see whether they were likely to be injured by such operation would, if found, have been at least some evidence of negligence." This statement of facts, with the conclusion drawn therefrom, is not inconsistent with the allegations of the declaration, and we believe applies with equal force to the evidence in the trial from which the present appeal is taken, and is sufficient ground for the refusal of the appellant's second prayer, and its D and E prayers as well.
The first exception also covers the rulings on the fourth and fifth prayers of the appellant, which were refused. The fourth prayer standing alone would not be objectionable. In effect it was a request for an instruction that if the jury found the boy was of such tender age as not to possess sufficient discretion to avoid danger, that his mother was on the sidewalk at or about the time of the accident, that the child ran into the highway and came in contact with the car, and that if the mother failed to use ordinary care under all the circumstances, and if her failure to exercise reasonable care in not preventing the child from so running into the highway directly contributed to the accident, then the verdict of the jury should be for the defendant. The fifth prayer asked the *Page 127 
court to instruct the jury that any failure on the part of the mother to use reasonable care to protect the child against injury is imputable to the child, and if they find that if the mother had used reasonable diligence to prevent the child from going into the roadway the accident would not have happened, their verdict should be for the defendant. The fifth prayer is faulty in that it assumes failure on the part of the mother to protect her child without taking into account all the circumstances shown by the evidence. Then too the fourth and fifth prayers are covered by the facts set forth in the first and sixth prayers, which were granted. The first prayer submitted the question of the contributory negligence of the child; the third the contributory negligence of the father; and the sixth the contributory negligence of the mother. The rejected fourth and fifth prayers do no more than in other language submit the same instructions to the jury as the first and sixth prayers, and the appellant cannot, therefore, complain that the jury was uninstructed as to every element contained in the fourth and fifth prayers. The repetition and multiplication of instructions on a given point are not commended. It is not error to refuse instructions which, though differently expressed, have the same effect as other granted instructions. Rosenkovitch v. UnitedRys. Co., 108 Md. 316; Levine v. Chambers, 141 Md. 342;Wilson v. Kelso, 115 Md. 162.
Inasmuch as it is our opinion that there was sufficient evidence of negligence on the part of the appellant's employee to take this case to the jury, and because we think the questions of the contributory negligence of the deceased child and of his father and mother were fairly presented by the granted prayers of the appellant, we find no error in the rulings of the trial court on any of the prayers.
The only other exception taken by the appellant was to the ruling of the trial court on a question put to Ellsworth Marshall, a boy who lived at the corner of Emory and Portland Streets, three or four doors from Kolish, and who was playing on the sidewalk at the time of the accident. To the question, "Was this car when you saw it — the one that hit *Page 128 
Paul — was it going fast or slow?" the boy answered, "Oh, it was going faster than they always run," which the court interpreted, "Faster than they usually go?" and which the court, over objection, admitted. There is no reference to this exception in the appellant's brief, nor was there any comment on it in the argument, but we assume that it was objected to as improper to prove the speed of the trolley car. Judge Stockbridge, in State,use of Henderson, v. United Rys. Co., 139 Md. 306, 309, said: "He could, of course, have testified as to whether the car was moving rapidly or slowly, but not to fix the rate of speed as so much per hour, without having shown some special knowledge which would enable him to speak as an expert." Hopper, McGaw Co. v.Kelly, 145 Md. 161. There was evidence in this case that the car was running as fast as eighteen miles per hour when it hit the child, which is in without objection. We cannot, therefore, see wherein the answer to this question did the appellant any harm, even if it had been objectionable.
Judgment affirmed, with costs.