JULIUS ZULVER v. ALTON H. ROBERTS.
[No. 14, April Term, 1932.]

*Decided June 20th, 1932.*

The cause was was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George Ross Veazey* and *Maxwell Suls,* for the appellant.

*Foster H. Fanseen,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is the plaintiff's appeal from a judgment on the verdict of a jury in the Baltimore City Court in favor of the defendant below. The record contains two exceptions, one to a ruling on evidence, and the other to the action of the court in granting certain of the defendant's prayers. The only prayer offered by the plaintiff was a damage prayer, which was granted; while the defendant offered five prayers, numbered one, two, three, four, and six, all of which were granted, the first, fourth, and sixth with modifications made by the court.

The facts, briefly stated, are that on the evening of January 22nd, 1930, a permit had been obtained from the proper authorities to exclude from through traffic Allendale Road for several blocks, for the purpose of permitting sledding by children and others in the neighborhood. Allendale Road runs generally north and south, the top of the hill beginning on the north about Duvall Avenue and extending towards the south across and beyond Bateman Avenue. The 2700 block of Allendale Road is a lengthy block between Duvall Avenue on the north and Bateman Avenue on the south. Both the plaintiff and defendant live in this block on the west side of the street, the plaintiff's residence being 2704 and the defendant's 2712. Between the defendant's house and the bed of Allendale Road there is a concrete sidewalk from two to four feet in width, a strip of grass about the same width, and a gutter along the edge of the street. There is a garage at the back of the defendant's house, to the rear or west of the defendant's dwelling, which can only be reached with an automobile by a road along the south boundary of the defendant's lot from Allendale Road.

The evidence is uncontradicted that, by the permit under which the street was temporarily closed from traffic, the residents within the restricted area were permitted to travel to and from their homes by the attendants at points where the barriers to the entrances to Allendale Road had been erected. The plaintiff is a boy who at the time of the accident was between seven and eight years old. Some time after dark

on the evening in question he asked and was given permission by his mother to go on the street for the purpose of sledding. The defendant returned from his place of employment to his home on that evening about five o'clock—"he thinks that it was dark"—turned into Allendale Road at Duvall Avenue, and at that time a few people had started to coast. After supper he left his home and went out by the rear entrance, got his car, which was a Studebaker eight cylinder, turned on his headlights, and started to back the car out to the street. There was no one with him. He stopped the car in the outlet directly across the sidewalk, with the rear wheels in the gutter, no part of the car protruding into the street. He "was waiting for a chance to come out, sitting in the car, and some boys were going up the street, and I told them to hold the sleigh riding while I came out". He knew boys were sleigh riding in the street, at least at that moment. At that time the car was facing west, the right-hand side being towards the north, and he could see out of the car to his right, up the west sidewalk, north on Allendale Road, which was well lighted all the way up. He remained in this position two or three minutes, and while there saw the plaintiff coming down the sidewalk on his sled, lying on his stomach, face down; he saw the plaintiff when he was about fifteen feet from the car; he did not anticipate anybody would be coasting on the sidewalk, and, after seeing the plaintiff, was unable to move his car in time to prevent the collision. The plaintiff struck the right running board of the car and was severely injured. According to the defendant's testimony, of which there is no contradiction, immediately upon seeing the plaintiff in a perilous situation he started to lower the window on the right-hand side, and called, "but it was too late". He then jumped out of the car and ran or started to run around the back to catch him, but was unable to prevent the accident. After the accident he took the boy from underneath the car, and was told by the boy that he was not hurt; then the boy ran his hands through his hair, saw blood, and ran away. The defendant picked the sled from underneath the car in the back, and, learning the address of the plaintiff

from some of the boys, went down to his house. Later, accompanied by the plaintiff's father and mother, he carried the plaintiff to the hospital in his car.

The trial was held about a year and ten months after the accident, at which time the plaintiff was between nine and ten year old; and from his testimony it is evident that he is a boy of fully the average intelligence, and is appreciative of facts and circumstances such as children of that age would ordinarily be expected to understand. It is evident that he remembered distinctly and understood the circumstances at the time of the accident and his testimony as to the occurrence is practically the same as given by the defendant—that at the time he went up to the top of the hill the car was not across the sidewalk; that he was lying on his stomach coming down the hill, and did not see the car until he got so close to it that he was unable to stop before hitting it; that he saw no lights on the car, but that the parking light would have been on the left-hand side, which he could not have seen; that at school he was in the "high third grade."

The single exception to the evidence was the overruling of an objection by the plaintiff to the following question asked of the police sergeant: "Under the permit that I have just read, dated January 22nd, 1930, what was your practice during the hours of 3 P. M. and 10 P. M. so far as people were concerned who lived on Allendale Road between the two streets referred to, with automobiles going in and out?" We find no error in this ruling, as in our opinion it was proper to show by the police sergeant that, under permits such as were obtained in this case, the residents within the restricted area were allowed to go in and out with their machines.

The first contention in respect to the court's ruling on the prayers is that a boy seven years of age, as a matter of law, cannot be charged with contributory negligence. It seems clear that the weight of authority in this country outside of our state supports such a contention, some of the courts holding that children under the age of six are incapable of contributory negligence, while the apparent majority fix

scven as the age below which they are conclusively presumed to be incapable. This, however, is not the rule of this jurisdiction, it being here held that the question is one to be submitted to the jury under proper instructions. *Balto. & O. R. Co. v. State, use of Fryer,* 30 Md. 47; *Wise v. Ackerman,* 76 Md. 375, 25 A. 424; *State v. Wash., B. & A. Electric R. Co.,* 149 Md. 443, 131 A. 822; *Wash., B. & A. Electric R. Co. v. State,* 153 Md. 119, 137 A. 484; *United Rys. & Electric Co. v. Carneal,* 110 Md. 211, 72 A. 771. In these cases the question of contributory negligence of children as young as three years old has been submitted for determination by a jury; all of them, however, recognizing the universal rule that a child of tender years is bound only to use that degree of care which ordinarily prudent children of that age and like intelligence are accustomed to use under the circumstances, and they assume the risk only of dangers the existence of which they know, or which, in the exercise of this degree of care, they ought to have known. They are only expected and required to exercise that degree of discretion and judgment which a normal child of that age would ordinarily use under similar circumstances. The plaintiff here, judging from the record, is a boy fully equal, if not superior in intelligence and judgment, to the average boy of his age; and we think that, under the decisions above cited, the question of his contributory negligence as a defense was properly left to the jury for determination.

The second objection urged by the appellant is that the defendant's first and fourth prayers are erroneous, in that they fail to instruct the jury that children of tender age are only required to exercise that degree of care which children of such age and average intelligence would ordinarily exercise under like conditions. The first prayer instructs the jury "that if they believe from the evidence in this case that the accident and injury alleged to have been sustained by the infant plaintiff were caused through his own negligence and not through any negligence on the part of the defendant, then the verdict of the jury must be for the defendant." The

fourth prayer instructs the jury "that even if they shall believe from the evidence that the defendant was guilty of negligence, yet if they shall further believe from the evidence that the infant plaintiff was also guilty of negligence and that the injury complained of was directly caused partly by the negligence of the defendant and partly by the negligence of the infant plaintiff, then the verdict of the jury must be for the defendant without regard to whose negligence was the greater; provided, however, that the jury shall further find that the defendant by the exercise of ordinary care could not, after he saw the plaintiff in a position of danger, or by the exercise of ordinary care might have so seen him, have prevented the accident."

As stated, the plaintiff asked no instruction on the question of negligence or contributory negligence. The word used in the defendant's first and fourth prayers is "negligence," without defining or limiting the meaning of that word. Under such instruction the jury was at liberty to consider all of the circumstances disclosed by the evidence, among which were the age and appearance of the plaintiff. It was also permissible, under these instructions, for counsel to argue fully to the jury that children could not be expected and are not required to exercise the same degree of care as adults. Being permitted to do so, presumably counsel did argue as stated; and, if the plaintiff desired a more definite and stricter instruction as to what constitutes negligence or want of negligence on the part of young children, it should have been applied for, and no doubt would have been granted; if refused, it could have been made the basis of a successful appeal.

It is further argued that these prayers are misleading, because the second prayer, dealing with what constitutes negligence on the part of the defendant, states "that the law makes no unreasonable demand, and that it will not consider the defendant as guilty of negligence in failing to take precautions which in the opinion of the jury no person of ordinary prudence would have taken under the circumstances." The second prayer is a correct statement of the law; and it

seems to us to be an untenable argument that, in correctly defining negligence on the part of the defendant, the jury would be misled into believing that the same degree of care is required of a child of tender years as would be required of an adult.

Considering all the circumstances of the case, and the instructions granted at the instance of the defendant, as modified by the court, it was submitted in the form chosen by the plaintiff; and as stated, under this form, counsel for plaintiff could argue the same propositions of law and common sense, and the jury could have found exactly the same verdict, as in the event that what the plaintiff now complains of as having been omitted had been included in the defendant's prayers. Finding no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*