# PRIVETT, ET AL. *v.* THE HAUSWALD BAKERY

[No. 371, September Term, 1969.]

*Decided May 12, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*A. Harold DuBois,* with whom were *Stanley Levin, Verderaime & DuBois, A. Freeborn Brown* and *Brown, Brown, Lanahan & Whitfill* on the brief, for appellants.

*William M. Nickerson,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

In the early winter of 1964 Mrs. Privett, the appellant, was driving her husband's new automobile north on Route 136, a two-lane road in Harford County, on the way to work about 8:30 in the morning when according to her view at the time, or her later more reflective version, one of two events occurred. At the time she said a bread truck left its position in front of a store on the east side of Route 136 and she thought it was coming out in front of her, hit her brakes and skidded (the morning was foggy and some snow and ice were on the road) into one of two cars parked in front of the store some six feet east of the roadway of Route 136. At the trial Mrs. Privett's hedge against her statement the morning of the accident was that the bakery truck came onto the smooth paved portion of Route 136 directly in front of her, causing her to slam on the brakes and skid into the parked car.

The truck driver says he started up from in front of the store—some twenty feet off Route 136—and drove within six feet of the roadway so that he could see to the left towards a curve around which Mrs. Privett was coming. Mrs. Privett says that when he saw her he backed up but says that before this he had driven to a position actually in the roadway directly in front of her.

The further testimony was that almost immediately after the accident Mrs. Privett told the truck driver that she was not hurt and the accident was her fault, and "to go ahead and call the State Troopers," and that she told the lady who owned the parked car she hit that it was her fault. The investigating State Trooper testified that Mrs. Privett placed the position of the truck when she hit the brakes as several feet off the paved portion of Route 136, and testified further that along the east side of Route 136 in front of the store there was loose stone or gravel which could be considered either a shoulder of Route 136 or part of the parking area in front of the store, most of which was paved.

Mrs. Privett makes two contentions to us. She says

Judge Raine erred in not instructing the jury that as a matter of law she was not guilty of negligence and then erred in instructing the jury that the truck driver had not violated Code (1967 Repl. Vol.), Art. 66½, § 234, unless he had entered the paved portion of Route 136 in violation of Mrs. Privett's rights as a driver on a smooth, paved highway favored over one entering the intersection from a private road.

The case clearly was one for the jury. Mrs. Privett's operation of her vehicle was such that she lost control of it and there was testimony that she told two people at the time, unequivocally, that the collision was due to her fault.

We turn to her second point. Judge Raine told the jury that the truck driver violated § 234 of Art. 66½ only if he "actually entered onto the paved portion of Maryland Route 136." Mrs. Privett by the offer of prayers and by objection to the charge, which referred to the prayers, requested Judge Raine to instruct that under the statutory definition of a highway a shoulder is part of the highway and that the jury could find that the truck driver violated § 234 if they found that before stopping he had invaded the shoulder of Route 136 in violation of Mrs. Privett's right as the favored driver to proceed uninterruptedly along that highway.

We think Judge Raine correctly instructed the jury. It is true that Code, Art. 89B, § 2 (a) defines "Road-Highway" as broadly as can be imagined, as:

> "Both the word 'road' and the word 'highway' include rights-of-way, roadway surfaces, roadway subgrades, shoulders, median dividers, drainage facilities and structures, roadway cuts, roadway fills, guardrails, bridges, highway grade elimination structures, railroad grade elimination structures, tunnels, overpasses, underpasses, and other structures forming an integral part of a road or highway."

It is equally true, however, that Art. 66½, § 234, makes

it the duty of the operator of a vehicle "entering a paved public highway * * * from an unpaved public highway or from a private road or drive" to come to a full stop "upon reaching the *intersection,* and yield the right-of-way to all vehicles approaching on such paved public highway." The emphasis in the quotation was added and all subsequent emphasis in quoted statutes likewise has been added.

The statute makes the stopping point the near edge of the intersection. Code (1967 Repl. Vol.), Art. 66½, § 2 (20) defines "Intersection" as:

> "The area embraced within the prolongation or connection of the lateral curb lines, or if none, the lateral boundary lines of the *roadways* of two highways which join one another at, or approximately at, right angles, or the area within which vehicles travelling upon different highways joining at any other angle may come in conflict."

Article 66½, § 2 (47), defines "Roadway" as: "That *portion* of a highway improved, designed, or *ordinarily used* for vehicular travel."

The definition of "Street or Highway" in Art. 66½, § 2 (58), includes "any highway or thoroughfare of any kind used by the public whether actually dedicated * * * or otherwise."

We think it is clear from the definitions that the "paved public highway" defined in § 234 of Art. 66½ as "a highway having a hard, smooth surface * * *," see *Slutter v. Homer,* 244 Md. 131, 136,[1] was equated in legislative

---

1. "Sec. 234 makes the operator of a vehicle upon a paved public highway the favored driver at the intersection of the paved highway with an unpaved highway. A paved highway, as defined in that Section, is one having a hard, smooth surface. The clear legislative intent is that the composition of the road, whether of gravel, crushed stone or other similar substance, is immaterial, as long as the highway has a hard, smooth surface. Correspondingly, and contrary to the appellant's contention, the material of which the highway is composed does not of itself make it one with a hard, smooth surface. It is the nature of the surface which the Legislature has made controlling."

thought and intent with a roadway and that in the case before us § 234 did not require a stop until the eastern lateral line of the roadway of Route 136, that is the smooth, paved surface, was reached.

The statutes in Art. 66½ requiring a stop before entering a boulevard, § 242, and a stop or a yield before entering a through street, § 233, reinforce our view of the meaning of § 234.

The three sections have the common purpose of facilitating the uninterrupted and safe flow of traffic on favored roads and streets and as nearly as may be are to be given the same construction. *Shriner v. Mullhausen,* 210 Md. 104, 115; *Zeamer v. Reeves,* 225 Md. 526, 531-532; *Goosman v. A. Duie Pyle, Inc.,* 320 F. 2d 45, 48. Nevertheless, under the statutes the point at which the stop must be made may vary with the location, nature and type of highway involved.[2] Section 242 (a) says that the State Roads Commission (with reference to State and County highways) and local authorities (with reference to highways under their jurisdiction) may designate through highways "and erect stop signs at specified entrances thereto or may designate any intersection as a stop intersection and erect like signs at one or more entrances to such intersection." Paragraph (b) of § 242 next says that a stop sign shall be located as nearly as practicable "at the property line of the highway at the entrance to which the full stop must be made, or at the nearest line of the crosswalk thereat, or if none *at the nearest line of the roadway.*" Paragraph c requires "a full stop at such sign or at a clearly marked stop line be-

---

2. Section 189 of Art. 66½ of the Code requires the State Roads Commission to adopt a manual and specifications for a uniform system of traffic control devices (made binding on localities under § 191 of Art. 66½). The law—§ 242 (b) of Art. 66½—directs that stop signs therein called for to "be located as near as practical at the property line of the highway." The Manual of Traffic Control Devices of the Commission requires such signs to be erected not closer than six feet nor more than fifty feet from the intersection. Webb, *Bothersome Boulevards,* 26 Md. L. Rev. 111, 115.

fore entering an intersection * * *." Section 233 (b) reads:

> "The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right-of-way to a vehicle approaching on the intersecting highway *as required herein at an intersection where a stop sign is erected* at one or more entrances thereto although not part of a through highway."

Section 243 of Art. 66½ is consistent with the theory that under the statutes the point of required stop may vary. It provides that a vehicle emerging from an alley or private driveway "shall come to a full stop *immediately* prior to driving onto a sidewalk or into the sidewalk area extending across any alleyway or private driveway." We see § 234 as similar. In effect the legislature in § 234 said that a vehicle emerging from a private driveway (or unpaved street) onto a paved public highway shall come to a full stop immediately prior to entering the intersection, that is, the roadway, which is the area of potential conflict between the favored and unfavored vehicles. This view is consonant and compatible with the established rule of the boulevard law that a favored driver is not compelled to anticipate that the unfavored driver will invade his right-of-way even if he is seen at the edge of the roadway, *Zeamer v. Reeves, supra,* and with the logical idea that without a stop sign or a stop line to obey, the most reliable and readily identifiable stop symbol to a driver subject to § 234 is the edge of the "hard, smooth, surface" particularly in the many instances like that before us in which there is either no shoulder or an area on the side of the roadway which may be part of the private area or a shoulder.

Judge Raine's charge correctly instructed the jury and the judgment which followed its verdict will be affirmed.

*Judgment affirmed, with costs.*