GILLESPIE *v.* R & J CONSTRUCTION
COMPANY ET AL.

[No. 231, September Term, 1974.]

*Decided July 8, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Marvin B. Steinberg.* with whom were *Gomborov, Steinberg & Schlachman* on the brief, for appellant.

*Theodore B. Cornblatt* and *Alfred M. Porth,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant, Robert Wesley Gillespie (Gillespie), a carpenter, was injured while an employee of appellee, R & J Construction Company (R & J). A nail punctured the cornea of his right eye.

The Workmen's Compensation Commission determined that Gillespie sustained a permanent partial disability resulting in 100% loss of vision of his eye. R & J appealed to the Circuit Court for Howard County. It moved for a partial summary judgment on the basis of the fact that "the Commission had no evidence before it upon which it could base its finding that [Gillespie] sustained a permanent partial disability resulting in 100% loss of vision in his right eye," pointing out that Gillespie's doctor stated Gillespie had sustained a 90% permanent disability, with lesser disability stated by other doctors. Gillespie's testimony was, "I can see out of it, but it's blurry." Upon this basis a partial summary judgment was entered to the effect that Gillespie's recovery should not exceed the compensation payable for 90% permanent disability of his right eye. The matter ultimately came on for hearing before a jury. However, it was permitted to go to the jury without any limitation. The jury found that Gillespie sustained a 100% disability of his eye. On a motion for judgment *n.o.v.* the jury's verdict was "reduced to 90% permanent disability of [Gillespie's] right

eye." The Court of Special Appeals affirmed in an unreported opinion. We granted the writ of certiorari in order that we might consider the contention of Gillespie that the decision of the Court of Special Appeals was contrary to our opinion in *Gas Company v. Caler*, 157 Md. 596, 146 A. 750 (1929), that its decision "[w]as contrary to the clear intent of the legislature [in that it] equated loss of *use* to loss *of* " an eye and that the Court of Special Appeals "[u]surped the function of the Jury as the trier of fact." We shall affirm.

In considering the propriety of the grant of the motion for judgment *n.o.v.* we must begin with the fact that we are obliged to resolve all conflicts in the evidence in favor of the plaintiff (Gillespie, in this instance) and to assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support his right to recover. *Webster v. Larmore*, 268 Md. 153, 168, 299 A. 2d 814 (1973); *Baltimore & O. R.R. v. Plews*, 262 Md. 442, 449, 278 A. 2d 287 (1971); *Beck v. Baltimore Transit Co.*, 190 Md. 506, 509, 58 A. 2d 909 (1948), and cases there cited.

Gillespie described in some detail his difficulties with his right eye, stating that he could not do the work that he used to do, that he could not get up on a building and walk across joists now, that he could not saw a piece of wood following a straight line or use a power saw to follow a straight line using his right eye only, that he could not read a ruler, that he could not climb ladders because he could not judge distance, etc. Although at one point Gillespie testified that glasses were of no assistance to him, he did concede that they assisted him in reading. As earlier indicated, he said he could see out of the eye but it is always "blurry."

R & J's ophthalmologist testified that Gillespie's uncorrected vision in his right eye was 20/200 and that the permanent disability sustained by Gillespie to his right eye "would be listed as a maximum of forty-five to fifty per cent." Gillespie's ophthalmologist concurred in the finding of 20/200 vision in the right eye stating, however, that "according to all [his] findings, the pathology and the testing

on the Snellen card, he has in the neighborhood of ninety per cent disability."

Basically and fundamentally this case comes down to one of statutory construction. The claim here arises under Maryland Code (1957) Art. 101, § 36 (3) (c) providing that "[p]ermanent loss of use of . . . [an] eye, shall be considered as the equivalent of the loss of such . . . eye, and for the loss of the fractional part of the vision of either one or both eyes, the injured employee shall be compensated in like proportion to the compensation for total loss of vision, and in arriving at the fractional part of vision loss regard shall not be had for the effect that correcting lens or lenses may have upon the eye or eyes." It was because of the latter provision that the uncorrected vision was given.

In *Karns v. Liquid Carbonic Corp.*, 275 Md. 1, 338 A. 2d 251 (1975), we cited a host of cases to the effect that a hornbook rule of statutory construction is that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part, that all parts are to be reconciled and harmonized if possible, and that a corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory. The cases cited included *Kadan v. Bd. of Sup. of Elections*, 273 Md. 406, 415, 329 A. 2d 702 (1974), and *A. H. Smith Sand & Gravel v. Dep't*, 270 Md. 652, 659, 313 A. 2d 820 (1974). In *St. Paul Fire & Marine Ins. Co. v. Commissioner*, 275 Md. 130, 139, 339 A. 2d 291 (1975), we also cited a number of cases for the proposition that the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent and that in ascertaining that intent the Court considers the language of an enactment in its natural and ordinary signification. Cases cited included *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 555, 325 A. 2d 748 (1974); *City of Gaithersburg v. Mont. Co.*, 271 Md. 505, 511, 318 A. 2d 509 (1974); and *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974).

The Court of Special Appeals pointed out:

"The adjective 'blurry,' is defined to mean 'indistinct and hazy in outline or appearance; a hazy and indistinct image to the sight or mind.' *American Heritage Dictionary of the English Language* (1970). To the same effect *see: Webster's Third New International Dictionary*, (unabridged, 1968); *Webster's New International Dictionary* (2d ed., unabridged, 1947). In the absence of a showing to the contrary, we must assume that Gillespie intended his use of the adjective 'blurry' to be given its usual meaning."

Section 36 (4) (a) pertaining to "other cases" requires the Workmen's Compensation Commission to "determine the portion or percentage by which the industrial use of the employee's body [is] impaired as a result of the injury," taking "into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of the injury . . . ." Gillespie says that he does not claim that he should be compensated here upon the basis of industrial loss of use of his eye, but that the small amount of remaining vision is so infinitesimal as to mean in effect that he has lost all practical use of his eye. The statute, however, is not based upon loss of "practical use." It says "for the loss of the fractional part of the vision of either one or both eyes, the injured employee shall be compensated in like proportion to the compensation for total loss of vision . . . ." There is no total loss of vision here by Gillespie's own testimony. The highest percent of loss of vision to which reference is made is 90%.

*Gas Company v. Caler, supra,* cited by Gillespie, simply is not apposite. It involved a claim for "permanent total disability" which "means incapacity to do work of any kind." *Mureddu v. Gentile,* 233 Md. 216, 220, 196 A. 2d 82 (1964), and cases there cited. The employee had previously lost the sight of one eye. He was claiming total disability as a result of the splashing of acid into his good eye, so damaging it that "[a]t the time of the trial he testified he could tell the difference between light and darkness, but that was about

all; that he could not see anyone sitting in front of him, could not see to do any work." Thus, the effect of the injury on the employee's capacity to work is relevant when the claim is for "permanent total disability." In other words, *Caler* would only be apposite if Gillespie contended that the effect of the injury to his eye was to render him unable to do work of any kind. In the present case Gillespie was under § 36 (3). He is bound by the unambiguous language of that section.

The position taken in this case by the trial court and the Court of Special Appeals is consistent with that taken elsewhere under similar statutes. *See, e.g., Keyworth v. Atlantic Mills,* 42 R. I. 391, 108 A. 81, 8 A.L.R. 1322 (1919); 58 Am. Jur. *Workmen's Compensation* § 290 (1948), and Annots., 8 A.L.R. 1324 (1920), 24 A.L.R. 1467 (1923), 73 A.L.R. 706 (1931), 99 A.L.R. 1498 (1935), and 142 A.L.R. 822 (1943). We perceive no error. If it is the intention of the General Assembly that compensation be awarded in a case such as this on the basis of industrial loss of use of the eye, it must so state.

*Judgment affirmed; appellant to pay the costs.*