# TAYLOR ET AL. *v.* ARMIGER ET AL.

[No. 146, September Term, 1975.]

*Decided May 19, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Philip O. Foard,* with whom were *Stephen M. Hearne, Joseph L. Johnson* and *White, Mindel, Clarke & Hill* on the brief, for appellants.

*Theodore B. Oshrine,* with whom were *Donald C. Allen* and *Allen, Thieblot & Alexander* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court. MURPHY, C. J., concurs in the result and filed a concurring opinion at page 653 *infra.*

We shall here reverse a trial court decision that a child five years and eight days old was guilty of contributory negligence as a matter of law on the ground that he failed to obey the mandate of Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-404 that he "stop and yield the right-of-way to all vehicles approaching on the highway." He was on a tricycle which was held to be a vehicle within the meaning of Art. 66½, § 1-209.

In reaching our conclusion we shall not decide the question of whether a tricycle was a vehicle within the meaning of the then existing statute but shall hold that the

trial judge erred when he impliedly required this child to adhere to the standard required of an adult without permitting the jury to give consideration to the matters normally considered in judging contributory negligence on the part of a child.

Timothy R. Taylor was born April 11, 1967. On April 19, 1972, he was struck near his home in Rising Sun, Maryland, by a vehicle operated by Neysa M. Armiger, one of the appellees. The child's father sued Mrs. Armiger and her husband on behalf of the child and on his own behalf for the injuries sustained. The matter came on for trial before a jury in the Circuit Court for Cecil County. The defendants' motion for a directed verdict was granted at the close of the whole case, thus producing this appeal. We granted certiorari prior to the time the case was heard in the Court of Special Appeals.

We must first consider whether sufficient evidence of primary negligence was adduced to warrant consideration of the case by the jury notwithstanding the fact that the trial judge decided that the child was guilty of contributory negligence. This is so because, as Chief Judge Soboloff said for the Court in *Burkert v. Smith*, 201 Md. 452, 454-55, 94 A. 2d 460 (1953), "even if [the circuit court] should be found to have been in error in holding the plaintiff guilty of contributory negligence the action may still not be disturbed if there was no sufficient evidence of the defendant's negligence to require submission to the jury."

In considering the propriety of the grant of the motion we are obliged to resolve all conflicts in the evidence in favor of the plaintiffs (the child and his father in this instance) and to assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support their right to recover. *Gillespie v. R & J Constr. Co.*, 275 Md. 454, 456, 341 A. 2d 417 (1975); *Levine v. Rendler*, 272 Md. 1, 12, 320 A. 2d 258 (1974); *Webster v. Larmore*, 268 Md. 153, 168, 299 A. 2d 814 (1973); *Baltimore & O.R.R. v. Plews*, 262 Md. 442, 449, 278 A. 2d 287 (1971); *Beck v. Baltimore Transit Co.*, 190 Md. 506, 509, 58 A. 2d 909 (1948); and cases there cited.

The accident took place at about 6:30 p.m. when the child, riding on his plastic tricycle, entered a street in Rising Sun from a private driveway. The tricycle was described as being "approximately twenty inches high, total, from the ground to handlebar." The diameter of its front wheel was about 16 inches and that of its two rear wheels was about 9 inches. It had no brakes. The accident took place in a residential neighborhood where the speed limit was 25 miles per hour. An expert witness called by the plaintiffs testified that the minimum speed of the Armiger vehicle at the time was 36 miles per hour. This was based upon his reconstruction of the accident from photographs and a visit to the scene about 18 months after the accident.

Mrs. Armiger was familiar with the neighborhood, the fact that children lived on the street, and that the speed limit was 25 miles per hour. In fact, her brother lived around the corner from the scene of the accident.

A 25 mile per hour speed limit sign was conceded to have been in the area of the accident. In dispute was whether on the day of the accident there was erected immediately above that sign a sign which noted the presence of children and admonished motorists to drive slowly. Mrs. Armiger was not certain that it was present on the day of the accident. However, a neighboring property owner, Eugene A. Uhlan, testified that such signs had "been in that approximate location for as long as [he] c[ould] remember." For purposes of our evaluation of the case we must assume the presence of the sign at the time of the accident.

In the typical "dart out" case the child is a pedestrian. The applicable principles in evaluating primary negligence on the part of the motorist are the same, however. In *Miller v. Graff*, 196 Md. 609, 78 A. 2d 220 (1951), Judge Delaplaine said for the Court:

> "It is true that excessive speed of an automobile may not of itself be the proximate cause of an accident, but in some circumstances it may constitute negligence, if it directly contributes to the accident. *Ottenheimer v. Molohan*, 146 Md. 175,

184, 126 A. 97; *Sun Cab Co. v. Faulkner,* 163 Md. 477, 163 A. 194; *United States Fidelity & Guaranty Co. v. Continental Baking Co.,* 172 Md. 24, 27, 190 A. 768; *Bozman v. State, for Use of Cronhardt,* 177 Md. 151, 154, 9 A. 2d 60. Moreover, it is a criminal offense for any person to operate a motor vehicle over any public highway of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person. Code Supp. 1947, art. 66¹/₂, § 156." *Id.* at 618.

There was testimony in that case that a taxicab was traveling at a speed of about 45 miles per hour in a 25 mile per hour zone within a residential district, that a pedestrian saw the child's peril before the driver saw it and tried to prevent the accident by waving to the driver to stop, and that the driver applied his brakes too late to avert the accident. The Court found the evidence sufficient to admit of an inference that the proximate cause of the accident was the driver's unlawful speed and lack of care.

More recently, in *Alina v. Raschka,* 254 Md. 413, 418, 255 A. 2d 76 (1969), Judge Marbury observed for the Court that we have "stated on numerous occasions that if a child darts out in front of an approaching vehicle when the driver is traveling at a reasonable rate of speed and obeying the rules of the road so that with the exercise of due care he is unable to avoid hitting the child, the driver is not liable for any injuries sustained by the child." (Citing cases.)

In this instance the testimony supports the inference that the defendant driver exceeded the speed limit by 11 miles per hour in a residential neighborhood in which she knew that children resided and where a sign called attention to the presence of children. The accident occurred on a day and at an hour when one might expect children to be playing outside of their homes. We have no difficulty in concluding under our prior cases that this constituted sufficient evidence to warrant an inference of primary negligence.

Evidence adduced relative to the intelligence and understanding of the infant plaintiff was confined to testimony of his mother on cross-examination. She said that she had told her sons that they were not to play in the road and that she was satisfied that they understood her instructions. She also stated, "They were permitted to go down the sidewalk and down the gutter area until they were across from Uhlan's [where the accident took place] and go across the road to Uhlan's yard if they were to play with Susan [Uhlan], but they were not to ride down the road." The record then is:

"Q. Well, you were satisified that your sons understood they weren't to race their vehicles out into the road? A. I am satisfied they knew they were not to go out in the road to play, but I also realize that when they are playing with another child, they may temporarily forget what they are constantly reminded of when they're in our yard.

"Q. But you would say that your reminders to them about going in the road were of a constant nature? A. Yes.

"Q. You're satisfied that so far as they would have been in your yard, they would have remembered your constant —

"(Mr. Johnson) Objection, Your Honor.

"(The Court) Overruled.

"A. I think they would have, because I would have been there to remind them again.

"Q. Do I understand you to say that generally they knew that they were — the tricycles were not to be used in the roadway for any purpose? A. Yes."

The above is all of the evidence before the trial court on this subject. It will be seen immediately that we know nothing of the intelligence or the degree of maturity of this boy nor do we know anything as to whether he was or was not normally an obedient child.

Code (1957, 1970 Supp.) Art. 66½, § 11-404, as of the date

of the accident, provided that " [t]he driver of a vehicle about to enter . . . a highway from a private road or driveway shall stop and yield the right-of-way to all vehicles approaching on the highway." The street in question was a highway as that term is defined in Art. 66½, § 1-132. We have given this section and its predecessor the same interpretation as what is now § 11-403 pertaining to "through highways." *See, e.g., Quinn Freight Lines v. Woods*, 266 Md. 381, 386, 292 A. 2d 669 (1972); *Privett v. Hauswald Bakery*, 258 Md. 218, 223, 265 A. 2d 473 (1970); and *Grue et al. v. Collins*, 237 Md. 150, 157, 205 A. 2d 260 (1964). As is fully explicated in *Hensel v. Beckward*, 273 Md. 426, 330 A. 2d 196 (1974), and *Creaser v. Owens*, 267 Md. 238, 249, 297 A. 2d 235 (1972), "the absolute and unequivocal duty of the unfavored driver to stop and yield the right of way to all traffic during his entire passage through the favored highway is only tempered by the doctrine of last clear chance or a finding of contributory negligence on the part of the favored driver." No question of last clear chance was presented in this case. The trial judge based his ruling upon *Richards v. Goff*, 26 Md. App. 344, 338 A. 2d 80, *cert. denied*, 276 Md. 743 (1975). In granting the motion he said:

> "The essential facts in the case at hand are almost identical with the factual situation in the Richards' case, except that in this case the Plaintiff is a five-year old boy riding a tricycle whereas in the Richards' case the Plaintiff was a seven-year, eight-months old boy riding a bicycle.
>
> "As in the Richards' case, the basic uncontroverted facts in this case are that Timothy Taylor, on a tricycle, entered Pearl Street, a public street or highway, from a private driveway, and ran into an automobile operated by the Defendant, Mrs. Armiger, on the public highway. As to those facts reasonable minds could not differ. The tricycle upon which the Plaintiff was riding fits within the definition of a 'vehicle' as defined in Code, Article 66½, Sec. 1-209. Therefore, the

'boulevard law' applies, and the Plaintiff, the unfavored driver, is barred from recovery against the Defendant, the favored driver. The Defendant's motion for a directed verdict must therefore be granted and judgment is hereby entered in favor of the Defendant."

The decision of the trial judge obviously was founded upon the theory of contributory negligence.

A vehicle is defined by Art. 66½, § 1-209 as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." As the trial judge stated, *Richards* involved a collision between an automobile and a bicycle. The bicycle rider, seven years and eight months old at the time of the accident, entered a public highway from a private driveway. Code (1957, 1970 Supp.) Art. 66½, § 11-1202, as it read at the time of the accident in that case, provided that " [e]very person riding a bicycle upon a roadway shall be granted all of the rights and subject to all of the duties applicable to the driver of a vehicle by th[e] subtitle [entitled 'Operation of Bicycles and Play Vehicles'], except as to special regulations in th[at] part and except as to those provisions of [Art. 66½] which by their nature can have no application." The Court of Special Appeals "h[e]ld that the boulevard rule compel[led] the conclusion that as a matter of law James Goff was negligent."

As we observed in *Weissberg Corp. v. N. Y. UW Insur.*, 260 Md. 417, 421, 272 A. 2d 366 (1971), " [t]here is no shortage of cases defining the word 'vehicle.'" We have found no case that has defined a child's tricycle as a vehicle. However, for purposes of this case, we do not find it necessary to decide whether such a tricycle is or is not a vehicle.

The trial judge here used the same standard to determine whether this five year old child was guilty of contributory negligence as he would have used for an adult. This Court held in *State, Use of Taylor v. Barlly*, 216 Md. 94, 102, 140 A. 2d 173 (1958), "that a child, 5 years of age or over, may be

guilty of contributory negligence," although "bound only to use that degree of care which ordinarily prudent children of the same age, experience and intelligence are accustomed to use under the same circumstances, and they assume the risk only of dangers, the existence of which they know, or which, in the exercise of this degree of care, they should have known." The lowest age at which we appear to have held a child contributorily negligent as a matter of law is 11 years in *Kane v. Williams*, 229 Md. 59, 181 A. 2d 651 (1962), where he was found to have ignored a stop sign applicable to him on a bicycle.

Some courts have established seven years of age as a minimum age below which a child is held to be incapable of all negligence. W. Prosser, *Law of Torts* § 32 (4th ed. 1971) says on this subject:

"Although other limits have been set, those most commonly accepted are taken over from the arbitrary rules of the criminal law, as to the age at which children are capable of crime. Below the age of seven, the child is arbitrarily held to be incapable of any negligence; between seven and fourteen he is presumed to be incapable, but may be shown to be capable; from fourteen to twenty-one he is presumed to be capable, but the contrary may be shown. These multiples of seven are derived originally from the Bible, which is a poor reason for such arbitrary limits; and the analogy of the criminal law is certainly of dubious value where neither crime nor intent is in question. The great majority of the courts have rejected any such fixed and arbitrary rules of delimitation, and have held that children well under the age of seven can be capable of some negligent conduct. Undoubtedly there is an irreducible minimum, probably somewhere in the neighborhood of four years of age, but it ought not to be fixed by rules laid down in advance without regard to the particular case. As the age decreases, there are simply fewer

possibilities of negligence, until finally, at some indeterminate point, there are none at all. There is even more reason to say that there is no arbitrary maximum age, beyond which a minor is to be held to the same standard as an adult." *Id.* at 155-56.

Harper and James, *Law of Torts* § 16.8 (1956) says, "The great majority of states have established three as the age below which they will not allow consideration of contributory negligence." The authors further comment:

"Above that age, the general formula is kept flexible. Some states, however, have adopted rules of thumb on the analogy of rules of the criminal law for determining the ages at which children could be guilty of criminal intent. In these states, children under seven are conclusively presumed to be incapable of contributory negligence; as to those between seven and fourteen there is a rebuttable presumption that they have been careful (and their conduct is judged by the subjective standard indicated above); children over fourteen are treated like adults. Such a rule seems pretty mechanical and arbitrary. Even if its counterpart has validity in the criminal law the existence of any significant degree of correlation between the rates of development of a child's sense of right and wrong on the one hand, and his perception of danger and judgment of speeds and distances on the other, seems questionable." *Id.* at 925-26.

Restatement of Torts 2d § 283 A (1965) states that "the standard of conduct to which [a child] must conform to avoid being negligent is that of a reasonable person of like age, intelligence, and experience under like circumstances." Comment *b* expands upon this subject:

"The special standard to be applied in the case of children arises out of the public interest in their welfare and protection, together with the fact that

there is a wide basis of community experience upon which it is possible, as a practical matter, to determine what is to be expected of them.

"A child of tender years is not required to conform to the standard of behavior which it is reasonable to expect of an adult. His conduct is to be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience. A child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a minor who has not yet attained his majority may be quite as capable as an adult of exercising such qualities. Some courts have endeavored to lay down fixed rules as to a minimum age below which the child is incapable of being negligent, and a maximum age above which he is to be treated like an adult. Usually these rules have been derived from the old rules of the criminal law, by which a child under the age of seven was considered incapable of crime, and one over fourteen was considered to be as capable as an adult. The prevailing view is that in tort cases no such arbitrary limits can be fixed. Undoubtedly there is a minimum age, probably somewhere in the vicinity of four years, below which negligence can never be found; but with the great variation in the capacities of children and the situations which may arise, it cannot be fixed definitely for all cases.

"Between the two extremes there are children whose capacities are infinitely various. The standard of conduct required of the child is that which it is reasonable to expect of children of like age, intelligence, and experience. 'Intelligence' includes other mental capacities, but does not include judgment, which is an exercise of capacity

rather than the capacity itself. The fact that the child is mentally retarded, or that he is unusually bright for his years, is to be taken into account; but once such account is taken, the child is still required to exercise the judgment of a reasonable person of that intelligence. Likewise to be taken into account are the circumstances under which the child has lived, and his experience in encountering particular hazards, or the education he has received concerning them. If the child is of sufficient age, intelligence, and experience to understand the risks of a given situation, he is required to exercise such prudence in protecting himself, and such caution for the safety of others, as is common to children similarly qualified.

"It is impossible to lay down definite rules as to whether any child, or any class of children, should be able to appreciate and cope with the dangers of many situations. A child of ten may in one situation have sufficient capacity to appreciate the risk involved in his conduct, and to realize its unreasonable character, but in another situation he may lack the necessary mental capacity or experience to do so; and in the case of another child of ten of different mental capacity or experience a different conclusion may be reached in the same situation." *Id.* at 15-16.

Statements appear in Prosser, *op. cit.*, at 154-55 consistent with the above.

The views of these authorities from without the State are in accordance with our own statements on the subject. We shall adhere to our holding in *Taylor* "that a child, five years of age or over, may be guilty of contributory negligence . . . ."

The Maryland standard for evaluation of whether a child is guilty of contributory negligence is in accordance with that previously quoted from outside the State. For in-

stance, as our predecessors put it in *Zulver v. Roberts*, 162 Md. 636, 161 A. 9 (1932):

" [A] child of tender years is bound only to use that degree of care which ordinarily prudent children of that age and like intelligence are accustomed to use under the circumstances, and they assume the risk only of dangers the existence of which they know, or which, in the exercise of this degree of care, they ought to have known. They are only expected and required to exercise that degree of discretion and judgment which a normal child of that age would ordinarily use under similar circumstances." *Id.* at 641.

In *Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A. 2d 226 (1967), Judge Horney said for the Court:

"Contributory negligence, like primary negligence, is relative in nature and not absolute, and being relative, it necessarily depends on the particular circumstances of each case. *Boyd v. Simpler*, 222 Md. 126, 158 A. 2d 666 (1960); *Thomas v. Baltimore Transit Co.*, 211 Md. 262, 127 A. 2d 128 (1956). Again, like primary negligence, the answer to the problem, since the evidence and the inferences therefrom should have been considered in the light most favorable to the child, necessarily depended on the particular facts of the case. *Ensor v. Ortman*, 243 Md. 81, 220 A. 2d 82 (1966); *Brown v. Ellis*, 236 Md. 487, 204 A. 2d 526 (1964). Other than this, while the eight-year-old child was above the age when she could not ordinarily have been guilty of contributory negligence, *Kane v. Williams*, 229 Md. 59, 181 A. 2d 651 (1962), a child of tender years is not held to the same degree of care required of a reasonably prudent adult, but, rather, is held only to that measure of care which children of the same age and intelligence would be expected to exercise under similar circumstances. *McMahon v. Northern*

*Central Ry. Co.*, 39 Md. 438 (1874); *Henkelmann v. Metropolitan Life Ins. Co.*, 180 Md. 591, 26 A. 2d 418 (1942); *Miller v. Graff*, 196 Md. 609, 78 A. 2d 220 (1951); *Mumford v. United States*, 150 F. Supp. 63 (D. Md. 1957). And if the evidence is conflicting, the question of contributory negligence of the child should be resolved by the jury. *Henkelmann v. Metropolitan Life Ins. Co., supra." Id.* at 82-83.

*Rosvold v. Johnson*, 284 Minn. 162, 169 N.W.2d 598 (1969), involved a five year old child who was fatally injured when he rode his tricycle into the path of a construction vehicle on a residential street. Exception was taken by the defendant to the instruction on the issue of contributory negligence given to the jury. That instruction embodied the same theories as to the degree of care owed by a child for his own safety as that found in *Zulver, Taylor,* and *Stein.* The instruction was upheld. The court there pointed to evidence relative to the child's obedience, personality, and intelligence. In *Baltimore & O.R.R. v. State, Use of Fryer*, 30 Md. 47, 51 (1869), involving a five year old child, Judge Alvey used similar language. More recently in *Mahan v. State, Use of Carr*, 172 Md. 373, 191 A. 575 (1937), the Court had before it an exception to the refusal to grant an instruction relative to a three year old child. Judge Offutt there said for the Court:

"The eighth exception relates to the refusal of the defendant's seventh prayer. That prayer, if granted, would have instructed the jury that if the negligence of the child, Alvin Carr, contributed to the happening of the accident, their verdict must be for the defendant, and it gave this definition of 'negligence': 'the failure to exercise such degree of care as a reasonably prudent person would exercise under such circumstances.'

"The prayer could have been refused on the ground that there was in the case no evidence legally sufficient to show that the child was guilty of any negligence contributing to the accident. But apart from that it was misleading. The definition of

negligence given in the prayer as applied to an infant of the age of the child who was injured was incomplete. It required of the three year old child the same measure and kind of care that would be required of a reasonably prudent adult, but that may not be done. For while in this state a child of tender years may be guilty of negligence *(United Rys. & Elec. Co. v. Carneal,* 110 Md. 211, 232, 72 A. 771), it is not held to the same measure and kind of care that would be required of a normal person of full age *(Washington B. & A. Elec. R. Co. v. State, use of Kolish,* 153 Md. 119, 124, 137 A. 484, 485, *State, use of Kolish v. Washington B. & A. E. R. Co.,* 149 Md. 443, 459, 131 A. 822), but only to that degree of care which should be exercised by one of his age, for, as stated by Judge Sloan in the opinion in *Washington, B. & A. E. R. Co. v. State, etc., supra,* 'it could not be required to exercise any higher degree of care than might be expected of one of his years. *United Rys. Co. v. Carneal,* 110 Md. 232, 72 A. 771; *McMahon v. North Cent. R. Co.,* 39 Md. 438; *Balto. & O.R. Co. v. State, use of Fryer,* 30 Md. 51. . . .' " *Id.* at 385.

The effect of taking the case from the jury on the record as it exists here was to rule that this child was guilty of negligence contributing to the accident because he failed to use the degree of care for his own safety which should have been exercised by an adult. If the matter had been submitted to the jury it might have concluded that a child of the same age, experience, and intelligence would have been conscious of the danger involved and thus would not have ventured into the street in the path of the oncoming vehicle. On the other hand, the jurors might well have said to themselves, as Judge Alvey said for our predecessors in *Fryer,* that young Taylor "was a child of but five years of age, the degree of intelligence which [he] was capable of exerting for [his] rescue from danger, we may suppose to be very small," and conclude that he was not guilty of contributory negligence.

The trial judge erred in this instance in not permitting the jury to determine whether the child was or was not guilty of contributory negligence.

> *Judgment reversed; case remanded for new trial; costs to abide the final result.*

*Murphy, C. J., concurring*:

I agree with the Court that the record before us contains legally sufficient evidence to carry the case to the jury on the issue of Mrs. Armiger's primary negligence constituting a proximate cause of the accident. I also agree with the Court that the trial judge erred when he impliedly required Timothy "to adhere to the standard required of an adult without permitting the jury to give consideration to the matters normally considered in judging contributory negligence on the part of a child." However, in remanding the case for a new trial without deciding whether a tricycle was a vehicle within the meaning of the then existing boulevard law, the Court leaves unanswered an issue, the determination of which may well affect the outcome of a subsequent trial. I think the Court should have provided guidance to the trial court respecting the applicability of the boulevard rule where the unfavored mode of transportation was a tricycle.[1]

The accident occurred in April, 1972. Then, and now, a vehicle was defined by Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 1-209 as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." The vehicle involved here was described as a tricycle, approximately 20 inches high, with a larger wheel on the front and two smaller wheels on the back, the front wheel being about 16 inches in diameter and the rear wheels

---

1. Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-404 provides that "[t]he driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop and yield the right-of-way to all vehicles approaching on the highway." That a "bicycle," as defined in § 1-104, is a vehicle within the contemplation of the boulevard rule is plain from § 11-1202.

about 9 inches in diameter. It was of plastic construction and did not have brakes of any kind. There is no contention that the tricycle was incapable of transporting a person upon a highway. In the absence of an express provision or exception to the contrary, the plain sense meaning of § 1-209 compels the conclusion that the tricycle involved here was, in April, 1972, a vehicle.[2] There was, at that time, no provision or exception for tricycles. The legislature, perhaps anticipating harsh results in not having a special "tricycle" provision, enacted in 1974, two years after the accident in this case, Code, Art. 66½, § 1-104 (b) which categorizes a tricycle "propelled exclusively by human power" as a "play vehicle," and hence not subject to the mandate of the boulevard law. In my opinion, the trial judge properly concluded that "[t]he tricycle upon which the plaintiff was riding fits within the definition of a 'vehicle' . . ." for at the time of the accident, there was not a "play vehicle" exception by which an unfavored driver of a tricycle could escape application of the boulevard rule. The trial judge erred, not in finding the tricycle to be a vehicle, but only in failing to permit the jury to make the threshold determination of whether the child was or was not capable of contributory negligence.

---

**2.** *Compare* Moon v. Weeks, 25 Md. App. 322, 333 A. 2d 635 (1975), holding that a child's sled is obviously a vehicle since "it falls squarely within the definition of 'vehicle' when a person is transported upon it upon a highway."